## JACKSON'S ADMINISTRATORS v. THE NEWARK PLANKROAD COMPANY.

If the directors of a corporation in making a distribution of dividends, omit to apportion a quota thereof to certain shares of stock, the owner of such shares can maintain *assumpsit* against the company for breach of the contract which the law implies from the relationship of the parties, that an equal distribution of dividends will be made.

On demurrer to declaration.

For the demurrant, *A. Q. Keasbey.*

Contra, *A. O. Zabriskie.*

The opinion of the court was delivered by

THE CHIEF JUSTICE. This is an action of *assumpsit*. The first two counts of the declaration are special, and, in substance, are identical; the gravamen of each consisting of the following circumstances, *viz.*, that the plaintiffs' intestate was the owner of certain shares of the capital stock of the defendants, for which he held certificates; that thereby he became a stockholder in said corporation, and entitled to all the rights of a shareholder and to a participation in the profits of said corporation, and to his share and full proportion of all profits made by said corporation, and of the dividends thereof declared or made among the shareholders;

and that in consideration thereof the said corporation thereby promised said intestate that he should be entitled to all the rights of a shareholder therein, and that he should receive a share of the profits made by the said corporation, and of the dividends thereof declared among the shareholders, in proportion to the number of shares so held by him. The breach assigned is, that the defendants having made large profits, to wit, five per centum on each share of their capital stock, declared a dividend thereof to each of their shareholders, except to the plaintiffs' intestate.

As the demurrer admits these facts, it would seem to follow, as an inevitable conclusion, that the plaintiffs have a cause of action against the defendants, and that the only question to be considered is, whether it is enforceable in this present form of proceeding. The suit appears to be one of the first impression, but this circumstance is of no importance if it be founded in correct legal principles.

The theory upon which the plaintiffs' case rests appears to be this : a person holding, as owner, the stock of a corporation, becomes thereby entitled to a proportionate share in the profits of the company, and that, consequently, a duty is imposed by law, on the body corporate, to distribute all dividends which, from time to time, may be declared, ratably on all its capital stock ; and from this duty, it is said, springs the implied promise stated in the declaration.

I am unable to perceive any flaw in this statement of principles, or in the deduction which is made from them. It is clearly, as a general thing, the duty of the corporation to give to each stockholder an equable share of such dividends as are declared, and it has been an established doctrine of the courts that most of the duties imposed upon corporations by law, raise implied promises which will sustain, when broken, the action of *assumpsit.* A long line of well considered decisions rest upon this foundation. It is not deemed necessary to refer to them in detail ; a number of the most important will be found collected in *Angell & Ames on Corporations* 384.

The class of adjudications which, bears the closest analogy in principle to the case now considered, is that which relates to the remedy on the refusal of the corporation to transfer stock at the request of the owner. As long ago as the time of Lord Mansfield, it was decided that a special action of *assumpsit* was the remedy for such breach of duty. *Rex* v. *Bank of England, Doug. R.* 525, and the same rule has been repeatedly sanctioned and enforced by the courts of this country. *Shipley* v. *Mechanics Bank*, 10 *Johns.* 484 ; *Angell & Ames on Corp., chap. XVI.* And upon like grounds in *Gray* v. *The Portland Bank*, 3 *Mass.* 364, it was held by the Supreme Court of Massachusetts, that a special action on the case would lie against an incorporated company for a refusal to permit one of its stockholders to subscribe for a fair proportion of certain new stock, which had been issued by the corporation, with a view to increase its capital.

It will be perceived that in each of these cases the promise sued on was implied from the legal duty due from the corporation to the stockholder, growing out of the mere relationship between them. It is one of the obligations of a corporation, inherent in it essential nature, to permit, at the request of the holder, a transfer of its stock; and as this is an obligation not due to the members at large, but exclusively owing to the individual stockholder, it was properly held that the law, upon its ordinary principles, implied an agreement on the part of the company to discharge such specific obligation. But the right to transfer stock is no more an incident to its ownership than is the right to dividends upon it; and the duty of the company, in making a distribution of profits, to appropriate a quota to each share of stock, is, in all respects, as definite and specific as is the duty to allow a transfer of stock on a sale. In neither case does the act to be done rest in the discretion of the company, and in both of them the duty is due, not to the members in general, but to each separate stockholder. It is not perceived how these two classes of cases are to be discriminated. If a suable promise can be deduced from the absolute and specific duty to allow

stock to be transferred, so must the same result follow from
the absolute and specific duty to set off, when dividends are
declared to each share of stock, its distributive allotment.
It appears to me that the general rule, distinguishing between
that class of duties which give rise to actional promises by
implication and those which do not, may be thus stated;
that in all cases in which the duty is definite and due to the
individual, such promise will be implied; but that, on the
other hand, when such duties are indefinite or are due to the
members in their collective capacity, no such promise can
be inferred.    Thus, as an illustration, the duty to declare a
dividend, where profits are in hand, is one of the indefinite
and general character alluded to, it is, to a certain extent,
discretionary in its nature, and it is due, in no sense, to any
particular member, but to the community of members, and
hence there is no promise for its performance to be drawn in
favor of the separate shareholder.    But after a dividend is
declared the right to the profits becomes individualized, and
the duty to distribute, in certain proportions, which, so far
from being arbitrary, are mere matters of arithmetical cal-
culation, becomes attached as a right to each member dis-
tributively; and from these incidents arises the promise by
implication.

The case of *The State* v. *The Baltimore and Ohio R. R.
Co.*, 6 *Gill* 363, which was much relied on by the counsel
of the defendants, does not seem to me to be at all in point.
In that case the dividend which was declared was directed
to be paid to the smaller stockholders in cash, but to the
others partly in stock and partly in money—the company
not being in funds to the whole amount of the dividend.
The plaintiff, who belonged to the latter class of stockhold-
ers, refused to take payment to any extent in stock, and
sued for money had and received—and it was held that such
action could not be maintained.    As the money sued for
had never been in the hands of the company, it was clear
that the suit was misconceived, but the principle on which

the decision rests has no application to the case now before this court.

Judgment should be entered for the plaintiff on the present record.

Judgment for plaintiff.