JAMES G. KING et al. *vs.* THE PATERSON AND HUDSON RIVER RAILROAD COMPANY.

1. A dividend declared by a corporation becomes the individual property of the stockholder. It may be demanded by the stockholder, and if payment is refused, he may bring an action against the company for money had and received to his use.

2. The directors are the agents of the corporation, and have the right to declare dividends and fix the time and place of payment; but the time should not be so remote, or the place so far distant, as to prejudice the rights of the stockholders.

3. Directors may select a banking-house of good credit, and constitute it their registers, and may lawfully deposit the money there to pay dividends, giving notice to each stockholder of such deposit.

4. If the stockholder, after receiving due notice, neglect to draw the money within a reasonable time, and a loss is incurred by a failure of the bank, it will fall upon the stockholder, and he cannot call upon the company to reimburse him.

5. To clear the company from liability, they must show that notice of the place where the dividend was payable was given to the stockholder.

6. Advertisement in a newspaper circulating daily in the vicinity of men of business is presumptive evidence of notice, but may be overcome by positive proof, by the stockholder, that such notice did not come to his knowledge.

---

This action was brought by James G. King and Archibald G. King, executors of James G. King, deceased, against the Paterson and Hudson River Railroad Company, to recover dividends which had been declared by said company on the stock held by the plaintiffs, as such executors.

King v. Paterson and Hudson River Railroad Co.

The cause was tried at the Hudson Circuit, and a special verdict rendered, by which the following facts were found.

That James G. King departed this life on the third day of October, in the year eighteen hundred and fifty-three; that prior to his death, on the twenty-first day of February, eighteen hundred and fifty-three, the said James G. King made and executed his will in due form of law to pass real and personal estate; that in and by said will, James G. King and Archibald Gracie King, the sons of James G. King, deceased, were named executors.

Said will was duly admitted to probate by Edmund W. Kingsland, surrogate of the county of Hudson, on the second day of February, eighteen hundred and fifty-four, and letters testamentary were then, by said surrogate, granted to James G. King and Archibald Gracie King, executors as aforesaid, who took upon themselves the burthen of the administration of the said estate.

That on the twenty-first day of February, eighteen hundred and thirty-one, the president and directors of the Paterson and Hudson River Railroad Company were duly incorporated by an act of the legislature of the State of New Jersey; that under the authority given by the act last aforesaid, the said company have constructed a railroad from Paterson to Jersey City, in the State of New Jersey, which said railroad has been in operation for ten years last past and upwards; that the said James G. King and Archibald Gracie King, as such executors, were and are the owners and holders of two hundred shares of the capital stock of the said the president and directors of the Paterson and Hudson River Railroad Company. The certificate of the said company for one hundred of the said shares bears date January thirteenth, eighteen hundred and fifty-four, and another certificate of the said company for one hundred shares of the said capital stock bears date the twenty-first day of December, eighteen hundred and fifty-four, and said certificates were duly

issued to said executors by said company on the day they bear date; that the said company, by resolutions duly passed, declared dividends on the capital stock of the said company, one of which dividends was made payable on the fifth day of January, eighteen hundred and fifty-seven, and was four per cent., or two dollars, on each share of said capital stock, making a dividend for said executors on said two hundred shares of four hundred dollars. The other of said dividends was made payable on the third day of July, eighteen hundred and fifty-seven, and was for four and one-half per cent., or two dollars and twenty-five cents per share of said capital stock, making a dividend for said executors on said two hundred shares of four hundred and fifty dollars.

Said dividends were, by the direction of the said the president and directors of the said Paterson and Hudson River Railroad Company, made payable at the branch office of the Ohio Life Insurance and Trust Company, in the city of New York, said trust company being a corporation created by the laws of the State of Ohio; and the money to pay the said dividends was deposited in said branch office before the day of payment of each of said dividends, and was not withdrawn therefrom by the said defendants, but was there ready to be paid to the plaintiffs on their application, said trust company being appointed registers of the defendants to transfer stock of the said railroad company and to pay dividends of the said railroad company.

Notice of the dividends aforesaid was given by advertisements in the New York Times, a newspaper printed and published in the city of New York, of which the following are copies:

"Dividend.—The Paterson and Hudson Railroad Company have declared a dividend of four (4) per cent. in cash, payable to stockholders on the fifth of January, 1857, at the Ohio Life Insurance and Trust Company, New York."

King v. Paterson and Hudson River Railroad Co.

Which said advertisement was published in said newspaper, from and including the first day of January, 1857, to and including the eighth day of January, 1857.

"Dividend.—The Paterson and Hudson Railroad have declared a dividend of four and one half per cent., payable at the Ohio Life Insurance and Trust Company, New York, on the 3d of July."

Which last advertisement was published on the 2d, 3d, 4th, 6th, 7th, 8th, 9th, 10th, and 11th days of July, 1857.

On or about the twenty-fourth day of August, eighteen hundred and fifty-seven, the said the Ohio Life Insurance and Trust Company failed, and have never thereafter resumed payment.

The said dividend, made payable on the third day of July, eighteen hundred and fifty-seven, was duly demanded of the defendants by the plaintiffs on the twenty-fourth day of January, eighteen hundred and fifty-eight.

And the said dividend, made payable as aforesaid on the fifth day of January, eighteen hundred and fifty-seven, was duly demanded of the defendants by the plaintiffs on the first day of April, eighteen hundred and fifty-nine. Said demands were made in writing before the commencement of this suit, and payment of the said dividends was refused.

Besides the plaintiffs, nearly all the stockholders of the said railroad company collected the said dividends of January and July, 1857, at the office of the Ohio Life Insurance and Trust Company in New York.

Since the dividends of January fifth and July third, eighteen hundred and fifty-seven, dividends have been regularly declared by the defendants, payable in January and July of each year, and the plaintiffs have collected and received the dividends last referred to on the said two hundred shares.

The plaintiffs are bankers, being partners in the firm of James G. King's Sons, and do business in the city of

New York, having their place of business at Number 53 William street, in said city, and were so engaged in business at the time when said dividends in question were made payable, and have continued their business in the same place down to the rendition of the verdict.

On the fifth day of July, eighteen hundred and fifty-five, Archibald Gracie King, one of the plaintiffs, collected the dividends on the said stock made payable by defendants in July of that year, and said Archibald Gracie King, in the month of January, eighteen hundred and fifty-six, collected the dividends of the said defendants payable in that month.

James G. King, the other of the said plaintiffs, collected the dividend on the said stock declared by defendants on the third day of July, eighteen hundred and fifty-six, which dividends were made payable in the month last aforesaid.

Prior to the twelfth of June, eighteen hundred and fifty-six, Messrs. Ketchum, Rogers & Bennett, partners in business in the city of New York as bankers, were the registers of the said railroad company, and paid the dividends of the said company at the city of New York.

But whether or not, upon the whole matter aforesaid, by the jurors aforesaid, in form aforesaid found, the said defendants did promise and undertake in manner and form aforesaid the jurors aforesaid are altogether ignorant, and thereupon pray the advice of the said Supreme Court, before the aforesaid justices thereof; and if, upon the whole matter aforesaid, it shall seem to the said court that the said defendants did promise and undertake in manner and form aforesaid, then the jurors aforesaid upon their oath aforesaid say, that the said defendants did promise and undertake in manner and form as the said plaintiffs have within thereof complained against them, and in that case they assess the damages of the said plaintiffs, by reason of the matters aforesaid, besides their costs and charges by them about their suit in that behalf

expended, to eight hundred and eighty-one dollars and sixty-seven cents, and those costs and charges to six cents.

But if upon the whole matter aforesaid it shall seem to the said court that the defendants did not promise and undertake in manner and form within mentioned, then the jurors aforesaid upon their oath aforesaid say, that the defendants did not promise and undertake in manner and form as they have within in pleading alleged.

Argued before Justices HAINES, VAN DYKE and VREDENBURGH.

*I. W. Scudder*, for plaintiffs.

*A. S. Pennington*, for defendants.

HAINES, J. It is a clear proposition, that a dividend declared of the earnings of a company becomes thereupon the individual property of the stockholder, to be received by him on demand. It is a severance from the common fund of the company of so much for the use and benefit of each corporator, in his individual right, which may be demanded by him, and if refused, become the subject of an action for money had and received to his use.

" After a dividend is declared, each party entitled has a right in severalty to his particular proportion. The interests of those entitled to dividends become not only several and distinct, but positively adverse to each other, so that one cannot be said to represent the others as to the dividends declared." *Redfield on Railways* 597, § 10.

This must be so of necessity as the only means of enforcing a right to his share of the profits.

" Each stockholder, as to his share of the profits so declared, is in a position adverse to the corporation, as such, and to each of the other corporators, and hence his action will lie after demand duly made." *Redfield on R.* 597, *pl.* 5.

In *Le Roy* v. *The Globe Insurance Co., 2 Ed. Chancery*

657, McCoun, V. C., held that a dividend declared became the individual right of the stockholder, and that its appropriation conferred upon it so much of the character of a trust fund that it could not be devoted to other objects, and he directed the receivers to pay it out of the assets.

This case is in equity, but it settles the principle of severance of the dividend from the common fund, and of its thereby becoming an individual right; and if that is the true principle there is no necessity of resorting to a court of equity to enforce it. .

The action of *assumpsit* is equitable enough to meet all the exigencies of the case.

The same principle is recognized in *State* v. *Baltimore and Ohio R. R. Co.*, 6 *Gill R.* 363, and in *City of Ohio* v. *Toledo R. R. Co.*, 6 *Ohio R.* 489.

But it is insisted that the money to meet these dividends was deposited with the registers of the company, and notice thereof given, and that the loss consequent upon the failure of the registers must fall upon the plaintiffs, who had neglected to apply in time and receive the amount due to them.

The directors are the agents of the corporation, and in their official capacity agents of the stockholders also. They alone have the power to declare a dividend of the earnings of the corporation. Until it is so declared the stockholder has no certain and fixed individual right.

They may not only declare the amount of dividends, but also the time of their payment. No one will deny their right to fix the time of payment at a future day, so that it be reasonable and in good faith; and they have the like power to appoint a place of payment, so that it be within a reasonably convenient distance from their place of business or from that of the stockholders.

Should the place of payment be so remote as to prejudice the stockholders it may suggest some fraudulent design; but in the absence of any such design the di-

rectors, in their resolution declaring a dividend, may impose the terms of the payment as to the time and place, and each stockholder who would claim his share of the dividend must claim and take it *sub modo*.

In these respects the directors act for him as a corporator and as his agents, and their acts become his, and as such corporator he is bound by what they do in declaring the amount of dividend and time and place of payment.

Hence they may select a banking-house of good credit and constitute it their registers, and may lawfully deposit the money there, giving notice nevertheless to each stockholder of such deposit.

If, after due notice, the stockholders neglect to draw the money within a reasonable time, and a loss is incurred by the failure of the registers, it must fall upon him for his neglect; and then he has no right to call upon the other stockholders to contribute to reimburse him for what he has lost by his own negligence.

If the company had deposited the money in a bank of deposit, and given to the stockholder a check for the amount, and he had neglected to present the check within a reasonable time, and the bank had subsequently failed, there would be no question but that the loss must fall on the negligent holder of the check

The deposit in a banking-house with authority to receive on demand, and signing the dividend book, which is but a mere receipt, is on the same principle with the check, differing only in this, that the possession of the check is plenary evidence of notice of the time and place of payment. If that difference is met by due notice to the stockholder it is in substance the same.

In this case the jury have found that notice of each dividend and its place of payment was published for at least eight days in the New York Times, a public newspaper circulating extensively in the city of New York; and further, that the plaintiffs were bankers in the city of New York and in the immediate vicinity of the branch

office of the trust company ; and further, that they did
not ask for the dividends, although the registers con-
tinued in business and in good credit until the 24th day
of August, being more than six months after the first
dividend was declared, and more than fifty days after the
last.

Advertisement in a gazette circulating daily in the
vicinity of men of business is presumptive evidence of no-
tice, to be overcome, nevertheless, by positive proof to the
contrary.

The affidavits and supplement to the case agreed upon by
the parties, show that neither of the plaintiffs ever saw the
advertisement, or had any notice or knowledge that the
Ohio Life and Trust Company had been made the registers
of the defendants, or that the money to pay dividends had
been deposited there, until after the failure of that com-
pany. The loss cannot, therefore, be attributed to the negli-
gence of the plaintiffs. They are not at fault for not de-
manding payment before they were informed of the place of
deposit.

I think the plaintiffs are entitled to judgment on the ver-
dict for the amount of damages found, with costs.

VAN DYKE, J. The plaintiffs are the owners of 200
shares of the capital stock of the Paterson and Hudson
River Railroad Company, the defendants in this suit. In
January, 1857, the company declared a dividend of four
per cent. on its capital stock, amounting, on the stock held
by the plaintiffs, to the sum of $400. In July of that year
another dividend was declared and made by the company,
on their said stock, of four and a half per cent., amount-
ing, on the stock held by the plaintiffs, to the sum of $450.
The resolutions declaring these dividends were never re-
scinded nor reconsidered. On the contrary, the dividends
were in fact paid to nearly all the stockholders except the
plaintiffs. The plaintiffs not having received their divi-
dends, demanded them of the company, in 1858 or 1859,

and before the commencement of this suit; the payment thereof being refused, they commenced this action to recover them. Under these circumstances the plaintiffs will be entitled to recover, unless the defendants can show some good reasons to the contrary. The reasons that they give, and the defence that they make are, that the money to pay these dividends, and all or nearly all other dividends made at the times mentioned, was by the defendants placed in the hands and possession of their agents in the city of New York, to be by them paid to the respective stockholders at the office of such agency, of which facts the defendants caused a notice to be inserted and published for some ten days, in each case, in the Times, a newspaper printed and circulating in the city of New York, and in which city the plaintiffs at the time had an office, and were doing business as bankers; that the money to pay such dividends remained in the hands and possession of the said agents until the 24th day of August, 1857, when the said agents suspended business and failed, and have never since resumed payment.

It does not appear that these agents were ever at any previous time selected to pay the dividends declared by the defendants. Nor does it appear that the plaintiffs ever had any notice or knowledge in fact that the dividends were made or deposited in the hands of the agents mentioned for the purpose of payment, nor does it appear that they ever consented or agreed to such agency, or agreed to look to them for the payment of the money or dividends due them.

Do these things amount to such a defence as to defeat the claim of the plaintiffs? I think they do not. If the plaintiffs are to be bound by the arrangements of the defendants for the payment of these dividends, they were at least entitled to have notice of them. They have had no such notice, or if they have there is no evidence of it. It cannot be inferred. It must be proved by the defence.

It cannot be assumed, or maintained as a legal proposi-

tion, that every stockholder in a company either knows or is bound to know all the doings and proceedings of the officers of such company at the time or times when the acts are done. It is true that the interests of the stockholders may be legally affected by the action of a company through its officers, but as between the stockholders and the company itself, touching any claim which they have against it when in a solvent condition, they stand in the same position to it as a stranger, and except as to reports and the like, which may be made to the stockholders exclusively, they are about as ignorant of its affairs as he. No notice, therefore, of the making of these dividends, or of the placing them in the hands of this agency for payment, can be legally inferred from the mere fact of the plaintiffs being stockholders.

The only other evidence in the case from which notice can possibly be inferred, is the fact that the defendants caused it to be published in a newspaper in the city of New York; but it does not appear that such notice had ever before been published in that particular newspaper, either with or without the knowledge of the plaintiffs, nor does it appear that they ever saw either the notice or the paper having it in. And we cannot lawfully hold that any person is bound to know, at the peril of his legal rights, all that is in all the newspapers published in his vicinity, or in any one of them, when he may be surrounded by dozens of different ones, unless it may be some notice or advertisement that is published in obedience to some positive law or legal order, and which the law has made conclusive of his rights, whether he ever knows it or not. Such is not the case here. But it appears affirmatively, by the state of the case or special verdict, that these plaintiffs never had any notice or knowledge, in any form or at any time previous to the failure of the agents, of the existence of this agency or of the making of the dividends in question.

It might be a sufficient answer, therefore, to this defence,

to say that the necessary *knowledge* is not in any way brought home to the plaintiffs. But suppose they did know it, were they legally bound to go to this agency or to look to it to get their money? And could the company compel them to do so? It was no agency of theirs; they had nothing to do with its selection, and never consented to its appointment. They may have had abundance of reasons for preferring to let the agency alone, and to look directly to the company for their money at some convenient time, and the company had no power to prevent them. With the company they had a right to wait until the statute might possibly bar the claim, and they could not be compelled by the company, without their consent and at the peril of losing their claim, to present it at any other place short of that time.

If, indeed, the plaintiff had gone to the company, and had taken its check on its agency for these dividends, and had then held it an unreasonable length of time, during which the agents had failed and the money become lost, the case might have been different; but in such case two important facts would have intervened—first, it would have been an admission of notice of the agency on their part; and secondly, it would have been an assent on their part to the agency, and an agreement to some extent to look to them for pay, and besides, the question of the due presentment of a check, as such, might have been raised; but these things did not occur, and we need not trouble ourselves with their consideration.

We come back, then, to a few plain facts. The defendants owed the plantiffs money. Without their knowledge or consent, the defendants placed their funds in the hands of a third party for the purpose of paying the debt without giving the plaintiffs any notice of such arrangement. The money was allowed to remain with such agents, a part of it a little over seven months, and a part of it a little over one month, when the agents failed and the money was lost, and the question is, which of the par-

ties is to lose it? As before remarked, they were not the agents of the plaintiffs. They were not selected by them, nor with their knowledge or consent, and they should not be responsible for their defalcations, misfortunes, or faults. On the contrary, they were the agents of the defendants, selected by them, and intrusted by them, and they only must sustain the loss occasioned by their failure.

If a party owes me money he cannot compel me against my will to recognize another person as my debtor, although there may be money in his hands to pay me. If my debtor does not pay me when it is due, I can sue him and recover it without regard to the person whom he has appointed to pay me; and if such agent fails with the money in his hands it is the loss of my debtor, and not mine, whether the time be long or short that the money has been in the hands of such agent, and whether I have had notice of it or not.

How soon after a dividend is made payable at an agency, if at all, must a stockholder, to save himself from risk, go and demand it? Has the law settled the question? Is it five days, thirty days, three months, or a year? Where is the point of time beyond which he dare not wait? No one can tell, for no one knows.

In the case before us the money was all the time within the control of the defendants themselves; they could have withdrawn it, and repossessed themselves of it at any hour if it were not safe, but they took the responsibility of leaving it where they had taken the responsibility of placing it, and if it is gone it is their loss, and not the plaintiffs'.

I think, therefore, that in any aspect in which we can view the case, the plaintiffs are entitled to a verdict for the amount due them, and that the Circuit Court be advised accordingly.

VREDENBURGH, J., (dissenting.) This is a suit brought by the plaintiffs to recover the sum of $850, the same be-

ing the amount of two dividends on 200 shares of the stock of the defendants, declared, respectively, in January and July, 1857.

The special verdict finds that the dividends were, by the direction of the defendants, made payable at the branch office of the Ohio Life Insurance and Trust Company in the city of New York, and that the money to pay the said dividends was deposited in said office before their respective days of payment, and there ready to be paid to the plaintiffs; that the said trust company had been appointed register of the defendants to transfer stock and pay dividends; that notice of the said dividends, and where and when payable, had been advertised in a daily paper in said city, where the said plaintiffs were doing business as bankers, for several days before and after the days of payment; that the plaintiffs failed to draw their dividends until the 21st day of August, 1857, when the said trust company failed.

Do these facts entitle the plaintiffs to recover their dividends from the defendants in an action of *assumpsit?*

The first question presenting itself is, what was the effect of the declaration of the dividends and placing them in the custody of the trust company? Did it make the corporation a debtor to that amount to each stockholder, or did the dividend, as a chattel, become the property of the stockholder? If it made the corporation a debtor, then it could only be solved by payment. If the dividend, as a chattel, became the property of the stockholder, then the corporation was only liable in case of a want of ordinary care.

Until the dividend is declared the fund belongs solely to the corporation, and is answerable for its debts; but a dividend is supposed to be a thing done, that the profits are answerable to in actual specie, and are by the declaration separated from the corporation property, and declared to be and then to become the individual property of the stockholder. Neither before nor after the declaration of

the simple fact of the declaration does the corporation become the debtor of the stockholder. It is a simple declaration that there is such an amount of chattels in their hands, or in the hands of their officers, which the stockholder can take if and when he sees fit. The corporation may or may not be liable for its loss by its own carelessness or the carelessness of its officers, but in its keeping they are only bound to ordinary diligence.

Here no want of such diligence is found by the verdict. It is not shown but that the deposit when made with the trust company was not in good faith, and in that case it makes no difference whether it was lost by the insolvency of the trust company or whether it had been stolen from the safe of the defendants. *Le Roy* v. *The Globe Insurance Company*, 2 *Ed. Ch. R.* 657.

I think the special case shows no right of action in the plaintiffs.

AFFIRMED, 5 *Dutch.* 504.