STATE OF NEW JERSEY, BY THEODORE D. PARSONS, ATTORNEY GENERAL, PLAINTIFF-RESPONDENT, v. STANDARD OIL COMPANY, DEFENDANT-APPELLANT.

Argued May 8, 1950—Decided June 27, 1950.

*Mr. Josiah Stryker* argued the cause for appellant. *Messrs. Stryker, Tams & Horner,* attorneys.

*Mr. Emerson Richards,* Deputy Attorney General, argued the cause for the State. *Mr. Theodore D. Parsons,* Attorney General, on the brief.

The opinion of the court was delivered by

HEHER, J. The primary question here is the constitutional sufficiency of ch. 155 of the Session Laws of 1946, as amended by ch. 357 of the Session Laws of 1947 (*N. J. S. A.* 2:53–15 *et seq.*), providing for the escheat in certain circumstances of "moneys, negotiable instruments, choses in action, interest, debts or demands due to the escheated estate, stocks, bonds, deposits, machinery, farm crops, live stock, fixtures, and every other kind of tangible or intangible property and the accretions thereon," but excluding "real property or property" *in custodia legis* and "unclaimed bank deposits" made subject to escheat by ch. 199 of the Session Laws of 1945, *N. J. S. A.* 17:9–18 *et seq.*

The statute escheats to the State such personal property "within this State" of one who has died, or shall die, intestate, "without heirs or known kindred, capable of inheriting the same, and without leaving a surviving spouse;" the personal

property "within this State" of an "owner, beneficial owner, or person entitled" thereto who "has been or shall be and remain unknown for the period of fourteen successive years," or whose "whereabouts * * * has been or shall be and remain unknown for the period of fourteen successive years;" and personal property "wherever situate" which "has been or shall be and remain unclaimed for the period of fourteen successive years."

Jurisdiction to enter a judgment of escheat, originally granted to the old Court of Chancery, is now vested in the Chancery Division of the Superior Court. It is invoked by a petition setting forth the jurisdictional requisites. The court is enjoined to "make an order requiring the defendant to answer the petition within a time therein limited." And there is provision for "such other directions" as the court may deem appropriate "for the speedy determination of the cause, the protection of the property, or for the disclosure of information pertinent to the prosecution of the cause." Provision is also made for service of a copy of the petition and order "upon the defendant in the manner provided in the said order;" and the defendant is directed, within the time limited, to answer the petition and comply with the order. Upon the filing of the defendant's answer, and his compliance with the order, it is incumbent upon the court, by a further order, to designate a time and place for the hearing of the petition. A "notice" summarizing "the order designating the time and place of hearing, as approved by the court," shall then "be published in a manner directed by the court and shall also be published once a week for three successive weeks in a newspaper of general circulation designated by the court." provided that where the value of the personal property "of any one owner is less than $50, publication may be dispensed with if the court so directs." The notice shall direct that "any person who may claim to be entitled" to the property, or any interest therein, shall file his claim in the general form of an answer at least five days prior to the date fixed for the hearing. If no "answering pleadings" be filed within the

time prescribed "by order of the court," the court may proceed upon the petition alone, and enter judgment declaring that the property "has escheated to the State." Upon the entry of a judgment of escheat, the person "in possession" shall deliver the property to the State Treasurer; and the Treasurer is enjoined to convert the property into money after "public notice" and deposit the proceeds in the State Treasury.

The judgment of escheat, by express provision, operates "as a full, absolute and unconditional release and discharge of the person having such property in possesion or custody from any and all claim, demand, or liability to any person whatever other than the State Treasurer with respect to such property," and is pleadable "as an absolute bar to any action brought against such person with respect to such property by any person other than the State Treasurer."

Any person "whose property may have escheated to the State as provided" in the Act, "or any rightful heir entitled to such property by descent, may, within two years after" the entry of the judgment of escheat, apply for a reopening of the judgment, and "upon proof that" he was "without actual knowledge" of the escheat proceedings and "proof of ownership of such property or the right to possession thereof, the court may in its discretion reopen" the judgment: and "in the event" that the judgment "in part or in whole be revised or amended, the court may direct the State Treasurer to repay such part of the moneys received by the State Treasurer by reason" of the judgment "to the party or parties in the amended" judgment "entitled to have the same, and upon the entry of such" judgment "the State Treasurer shall repay the said moneys as provided" in the judgment, less the "expenses and charges that may have accrued or been paid out by reason of the entry of the original" judgment.

The judgment under review escheated to the State the following classes of personal property found to be in the possession of the defendant corporation:

 (a) Unpaid dividends declared upon shares of its capital stock, aggregating $6.238.01;

(b) Twelve shares of its common capital stock, of the aggregate par value of $300;

(c) Unpaid wages of former employees of the corporation whose services were rendered in New Jersey, aggregating $31,381.08;

(d) Moneys withheld from wages of former employees of the corporation for the purchase of Liberty Bonds, aggregating $1,210;

(e) The amounts of unpresented commercial bank checks issued by the corporation, aggregating $8,561.62; and

(f) Moneys withheld by the corporation on account of coupons of its Twenty-Year 5% Debenture issue of 1926, aggregating $3,125.

The Standard Oil Company is a domestic corporation. It was organized in 1882 under the laws of New Jersey; and it subsists under that franchise grant. It maintains its registered office in Flemington, New Jersey. It is stipulated that the stated items of property have remained unclaimed for more than fourteen successive years prior to the institution of this proceeding, and still remain unclaimed, and that the whereabouts of the owners or persons entitled to the property have remained unknown for a period of fourteen successive years prior to the commencement of this proceeding, and still remain unknown.

The Superior Court concluded that "Implicit in the terms and provisions of the Escheat Act is the persuasion of the Legislature that the retention of abandoned and unclaimed personal property for an ultimate and eventual disposition to the beneficial owner has constituted a relationship in the nature of a trust, hence the investment of jurisdiction in equity;" that while as between the debtor and creditor the debt or cause of action "has become extinct" by the lapse of time prescribed by the statute of limitations, "the right of recovery by the State in a proceeding in the nature of escheat is distinguishable and independent of the rights of the individuals and that such isolated prerogative right did not become extinct;" that the State "acts initially as a conservator of the abandoned property, not as a party to a contract, and that the sovereign right cannot be demolished or suppressed by the acts of the individual debtors and creditors;" that it was not the design of the statute of limitations to "abate the

pursuit by the State of its sovereign power to escheat unclaimed and abandoned property;" and that where "the diversities of legal argumentation concerning the constitutionality of a statute and the exercise of a prerogative power in pursuance thereof approximate an equiponderance, it is in accord with recognized policy for the court to resolve the issue in favor of validity," and it is therefore "unnecessary to discuss the application of the statute of limitations to the respective classes of intangible property here sought to be escheated."

## I.

It is the insistence of the defendant corporation that there was error in construing the Escheat Act as applicable to choses in action barred by the statute of limitations "at the time the right of the State accrued;" and that this construction and application contravenes paragraphs 1 and 16 of Article I of the Constitution of 1844, now paragraphs 1 and 20, respectively, of Article I of the Constitution of 1947.

The argument, in brief, is that the property subject to escheat under *R. S.* 2:53–17, considered in relation to the definitive terms of *R. S.* 2:53–15, "is property to which some person is entitled and which is in the possession or custody of some other person who is to be the defendant in the escheat proceeding;" that in the case of debts, "it is the claim or chose in action which is escheated, not the property of the debtor out of which the chose in action, if enforced, would be satisfied;" that if the unclaimed property is a debt, the State "takes the claim which the owner has * * *, subject to all defenses which the debtor is entitled to assert against the owner who has failed to claim the debt;" and that the defendant has a vested right to interpose the defense of the bar of the statute of limitations which the Legislature is not free to destroy.

It is not to be supposed that the Legislature intended to revive all outlawed debts and demands for appropriation

by the State, no matter when the obligation came into being and however long the right of enforcement ceased to exist. The inclusion of "debts or demands due to the escheated estate" in the definition of the "personal property" liable to escheat, embodied in *R. S.* 2:53–15, is significant of a purpose to reach only choses in action whose obligation had not been extinguished, either by satisfaction or by the bar of the statute of limitations.

There is a contrariety of view as to whether it is within the legislative competency to restore the means of enforcement of a chose in action rendered unenforceable by the efflux of time fixed by the statute of limitations. It is the settled rule in the Federal jurisdiction that state exertion of such power is not violative of the Fourteenth Amendment, where the lapse of time has not operated to vest title to real or personal property. *Campbell v. Holt,* 115 *U. S.* 620, 6 *S. Ct.* 209, 29 *L. Ed.* 483 (1885) ; *Chase Securities Corporation v. Donaldson,* 325 *U. S.* 304, 65 *S. Ct.* 1137, 89 *L. Ed.* 1628 (1945). The view of the majority in the case of *Campbell v. Holt* was that, while one may acquire a superior and paramount title or ownership to tangible property, real or personal, by long and undisturbed possession which is proof against legislative impairment by the removal of the bar of the statute of limitations, debts are on a different footing, chiefly because the statute operates in such cases merely to bar the remedy without destroying the right *in foro conscientiae.* "Time does not pay the debt," it was said, "but time may vest the right of property. * * * The statute of limitations does not destroy nor pay the debt." But this distinction between a vested right of ownership to real and tangible personal property arising out of the statute of limitations and the operation of the statute as a defense to contracts has had no recognition in this State. The principle is embedded in our jurisprudence that where a right of action has become barred under existing law, the statutory defense constitutes a vested right which is proof against legislative impairment. The protection is the same whether the debtor has satisfied

the demand or has become released from the obligation by the operation of the statute of limitations.

The principle was expounded in *Ryder v. Wilson's Executors*, 41 *N. J. L.* 9 (*Sup. Ct.* 1879). There, Chief Justice Beasley said: "The decisions of the courts, so far as my research has extended, are wholly in accord on this subject, and, with one voice, they declare that when a right of action has become barred under existing laws, the right to rely upon the statutory defence is a vested right, that cannot be rescinded or disturbed by subsequent legislation. Judge Cooley, treating of this subject, in his work on Constitutional Limitations, thus states his views: 'As to the circumstances under which a man may be said to have a vested right to a defence, it is somewhat difficult to lay down a comprehensive rule. He who has satisfied a demand, cannot have it revived against him; and he who has become released from a demand by the operation of the statute of limitations, is equally protected. In both cases, the right is gone, and to restore it, would be to create a new contract for the parties—a thing quite beyond the power of legislation.' *Const. Lim.* 369. And how completely the doctrine thus declared is a legitimate deduction from the authorities, will very plainly appear by a reference to the numerous cases collected by this same author, in his note on page 368." This doctrine was accepted by the old Court of Errors and Appeals in *Moore v. State*, 43 *N. J. L.* 203 (*E. & A.* 1881). Mr. Justice Dixon cited with approval cases holding that "laws never deliberately take away all remedy without an intention to destroy the right." It was deemed to be the settled rule that when a right of action is barred by a statute of limitations, it cannot be revived by act of the Legislature. Mr. Justice Van Syckel, in his dissenting opinion (*Ibid.* 248), said: "A right of action is a property right which may be sold and assigned. Therefore, after the bar has attached, an act of legislation which revives the right to sue, is an act to vest property in one at the expense of another." The principle was reiterated by the Court of Errors and Appeals in *Plahn v. Givernaud*, 85 *N. J. Eq.* 143 (*E. &*

*A.* 1915), and in *Ballantine & Sons v. Macken,* 94 *N. J. Eq.* 502 (*E. & A.* 1920), and by this court in *Shade v. Colgate,* 3 *N. J.* 91 (1949).

We conceive the New Jersey rule to be grounded in sound reason and principle. The statute of limitations is one of repose. As said by Mr. Justice Jackson in *Chase Securities Corporation v. Donaldson, supra,* such statutes "are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." While it has been the generally accepted rule that a statute of this class operates on the remedy merely and does not extinguish the right, it would seem that the destruction of the remedy reduces the "right" to a mere moral obligation sufficient only in the law to sustain a new promise without an independent consideration. Our rule perceives no essential difference between the vesting of rights to real and tangible personal property under a statute of this class and its operation as a defense to contracts. The abrogation of the remedy is equally a violation of the right, for a right without a remedy is a mere shadow. The difficulty was recognized in the *Chase Securities Corporation case.* It was found unnecesary to resolve the controversy as to the true rule. Such statutes were considered representative of "a public policy about the privilege to litigate" whose shelter does not constitute "a 'fundamental' right or what used to be called a 'natural' right of the individual," but whose pleas are "good only by legislative grace" and are "subject to a relatively large degree of legislative control," and are therefore not within the operation of the Fourteenth Amendment, which "does not make an act of state legislation void merely because it has some retrospective operation." The essence of the holding was that "it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense against the Fourteenth Amendment."

Under our law, the right to interpose the bar of the statute of limitations to actions in contract of this class is a vested property right which the law-making body may not abrogate or impair. It is fundamental that the denial of the remedy affects the substance of the right in the constitutional sense. *Henderson v. Weber,* 131 *N. J. L.* 299 (*E. & A.* 1944), appeal dismissed, 322 *U. S.* 713, 64 *S. Ct.* 1270, 88 *L. Ed.* 1555 (1944). When the remedy is taken away, the right ceases to exist.

This conception of the bar of the statute of limitations as a vested right of defense beyond legislative impairment was not abrogated or modified by the Constitution of 1947. The pertinent provisions of the Constitution of 1844 were re-enacted without substantial change; and it is to be presumed that their retention constituted the adoption of the quality and meaning accorded to them by the long-settled judicial construction. *State v. DeLorenzo,* 81 *N. J. L.* 613 (*E. & A.* 1911); *Commonwealth v. Reeder,* 171 *Pa.* 505, 33 *A.* 67 (1895). Compare *Cook v. Bennett Gravel Co.,* 90 *N. J. L.* 9 (*Sup. Ct.* 1917); *Ross v. Miller,* 115 *N. J. L.* 61 (*Sup. Ct.* 1935); *State v. Moresh,* 122 *N. J. L.* 77 (*E. & A.* 1939).

There is no substance to the contention that under the Constitution of 1947, the Escheat Act "limits the operation" of the statute of limitations, "even to the point of divesting" an accrued right of defense under its provisions. The argument is that these statutes, "having lost all force and vitality upon the abrogation of the Constitution of 1844" by the adoption of the Constitution of 1947, "again came into full force and effect simultaneously by virtue of their wholesale re-enactment under Paragraph 3 of the new Constitution," and so they must be "read together and reconciled," and therefore the Escheat Act is not "subject in any manner to the statute of limitations." But the mere continuance of these statutes by constitutional fiat is not indicative of a purpose to abrogate vested rights to defenses permissible under the statute of limitations. There is no suggestion of a legislative design,

by the original enactment, to annul the bar of the statute of limitations and revive in favor of the State a debt or demand that *inter partes* had lost its vitality by the operation of that statute. The Constitution of 1947 does not give the statute a radically different quality and meaning.

In modern usage "escheat" signifies the falling of property to the sovereign for want of an owner; and this category embraces not only property which has no other owner, but also property whose owner or whose owner's whereabouts is unknown. Under the common law of England escheats came to be classified as "another branch of the king's ordinary revenue." *Blackstone's Comm.* 302. What was originally an incident of tenure is now an incident of sovereignty. *Matthews v. Ward,* 10 *Gill. & J.* (*Md.*) 443, 451; *In re Melrose Avenue,* 234 *N. Y.* 48, 136 *N. E.* 235 (1922). The doctrine of escheat, at the early common law operative only upon that which was the subject of tenure, since it related to the reversionary right of the lord to take for want of a tenant, was eventually extended to include personal property, tangible and intangible. The principle was that the right to take that which belonged to no one appertained to the Crown, as *jura regalia.* *Dyke v. Walford,* 5 *Moo. P. C.* 434, 13 *Eng. Rep. Full Reprint* 557. The Crown steps in to take the property because it is vacant. Property described as *bona vacantia* is taken or assumed by the State, as its own. Property of this class falls "to the Crown as a matter of right in the exercise of its sovereign power." *Re Barnett's Trusts* (1902), 1 *Ch.* (*Eng.*) 847, 3 *B. R. C.* 198. "In personal estates, which are allodial by law, the King is last heir where no kin." Lord Mansfield in *Burgess v. Wheate,* 1 *W. Bl.* 123, 96 *Eng. Rep. Full Reprint* 67, 10 *Eng. Rul. Cas.* 614 (1884). Property escheats to the State as part of the common ownership. *Hamilton v. Brown,* 161 *U. S.* 256, 16 *S. Ct.* 585, 40 *L. Ed.* 691 (1896); *Sands v. Lynham,* 27 *Grat.* (*Va.*) (1876), 291, 295. "With tenures abolished, succession is by like right whether the subject of escheat is personal estate or real." *In re Melrose Avenue, supra.* The policy of the State's superior right

under the doctrine of *bona vacantia* was described by Blackstone as the avoidance of "that strife and contention, which the mere title of occupancy is apt to create and continue, and to provide for the support of public authority in a manner the least burthensome to individuals." *Blackstone's Comm.* 298. The State has the same dominion over intangible property that it has over tangible property. *Security Savings Bank v. California,* 263 *U. S.* 282, 44 *S. Ct.* 108, 68 *L. Ed.* 301 (1923); *Anderson National Bank v. Luckett,* 321 *U. S.* 233, 64 *S. Ct.* 599, 88 *L. Ed.* 692 (1944); *Connecticut Mutual Life Insurance Co. v. Moore,* 333 *U. S.* 541, 68 *S. Ct.* 682, 92 *L. Ed.* 863 (1947); *Roth v. Delano,* 338 *U. S.* 226, 70 *S. Ct.* 22, 94 *L. Ed.* —— (1949).

It is a corollary of the foregoing principles that where all remedy upon the intangibles has been barred by the statute of limitations, there is no property to escheat under the act now before us. The State's right is purely derivative; it takes only the interest of the unknown or absentee owner. If the remedy has been extinguished by the statute of limitations, the State is under like incapacity. The State takes only the creditor's right; it cannot create or revive an obligation that had no existence or had become extinct. *The King v. Morrall,* 6 *Price* 24, 146 *Eng. Rep. Full Reprint* 730 (*Exchequer* 1818). The principle was applied in *Lambert v. Taylor,* 4 *B. C.* 138, 107 *Eng. Rep. Full Reprint* 1010 (*K. B.* 1825). Here, defendant invokes the bar of the statute of limitations; and where that defense is sufficient in law, there is no property subject to escheat.

The subject matter of categories (c), (e), and (f) do not constitute escheatable property.

## II.

Our next inquiry is as to whether the unpaid dividends declared on the common capital stock of the defendant corporation constitute rights of property which have not been rendered unenforceable by the operation of the statute of limitations.

The contention is that when a declared dividend becomes payable the relation of debtor and creditor comes into being, and the "debt" is recoverable *"in assumpsit* which is an action in the nature of an action on the case," a remedy barred under *R. S.* 2:24–1 after the lapse of six years from the accrual of the cause of action.

Prior to 1918 the total amount of the declared dividends was deposited by the corporation in the National City Bank of New York, in a dividend disbursing account in the name of the corporation. Individual checks for the dividends were drawn by the corporation against this account to the order of the stockholders, and mailed to the stockholders, at the addresses shown on the records of the company, before the date fixed for the payment of the dividend. The unpaid dividends in this category aggregate but $85.50. The deposit thus made with the National City Bank was charged on defendant's books to the account of "Dividends Paid," to "record the reduction in surplus effected by the dividend, and credited to 'Accounts Payable.' " Eventually, the aggregate of the amounts in the "Dividends Paid" account found its way into the surplus account. The sum of the uncashed dividend checks was eventually deposited in a general bank account of the defendant by a check drawn by the Treasurer's Department. By appropriate bookkeeping entries, the unclaimed dividends were classified as income. These unclaimed dividends "were closed out in 1908 and 1938 by a transfer to 'Earnings.' "

The corporation honored all claims for dividends declared prior to 1918 "made more than 6 years after such dividends became payable," in one instance as late as 1948, "as a matter of Company policy for the purpose of maintaining amicable relations with stockholders without any consideration of the question whether or not the claims therefor were barred by the statute of limitations."

In 1918, the Guaranty Trust Company of New York was appointed transfer agent of the defendant corporation, and thereafter declared dividends were paid by the check of the

Trust Company drawn upon funds deposited by defendant for that purpose. These deposits were "mingled with the general funds of the Trust Company in the same manner as any general commercial deposit would be, and always remained so mingled." Again, the amounts deposited were charged by the corporation on its general ledger to the account of "Dividends Paid" and credited to "Accounts Payable." The deposits were ultimately "recorded in the surplus accounts." The defendant "has not recalled from the Trust Company the amounts of dividend checks which have remained unpaid." The undelivered checks amount to $1,711.13, and the checks presumably delivered but not presented for payment aggregate $4,445.65, or a total of $6,156.78. The Trust Company also honored demands for such dividends made more than six years after the date fixed for payment, "as a matter of Company policy" for the maintenance of "amicable relations with stockholders," without regard to the statute of limitations.

The defendant corporation cites *King v. Paterson and Hudson R. R. Co.,* 29 *N. J. L.* 82 *(Sup. Ct.* 1860) ; affirmed, *Ibid.* 504 (*E. & A.* 1861), and *Jackson's Administrators v. Newark Plankroad Co.,* 31 *N. J. L.* 277 *(Sup. Ct.* 1865), for the proposition that the relation between a corporation and its stockholders in respect of a dividend declared and payable is that of debtor and creditor; that an action *in assumpsit* will lie for the recovery of the dividend, and the action of *assumpsit* is an action on the case directly within the limitation provisions of *R. S.* 2 :24–1.

In the *King case* the holding of the old Court of Errors and Appeals was that after a dividend is declared, "all community of interest" in relation to the dividend ceases, and the stockholder has "a separate and independent right" to the dividend, enforceable by an action at law against the corporation after demand of payment. But Chancellor Green likened such dividends to bank deposits; and he classified them as trusts "in a limited sense." He regarded the corporation "as a trustee of the dividend unpaid to the stockholder," even though another was entrusted with the fund for the purpose

of payment. He cited the English case of *Le Roy v. The Globe Insurance Co., 2 Edw. Ch. R.* 657 (1836). There, it was held that payment of dividends withheld by a solvent corporation may be enforced at the instance of the stockholders by *mandamus,* by action at law on behalf of the individual stockholders for the payment of the money, or by bill in equity to obtain possession of the money upon the footing of its being a trust fund. The Vice-Chancellor declared that where there had been an "express appropriation and setting apart" from the company's earnings of the moneys for the payment of the declared dividends, thereby distinguishing the money from "the general mass of the company's funds," there was conferred upon the amount thus separated "the character of a trust fund which could not afterwards be diverted to other objects." He continued: "It makes no difference, in my judgment, that the money was not told out and specifically set apart in the bank to meet these checks or that a separate fund was not created for the purpose or that the money intended to meet them still formed a part of the general mass standing to the credit of the company on the books of the bank: for this court can, nevertheless, lay hold of the mass and separate so much as may be necessary to accomplish what was intended and which accident alone prevented at the time." This on the hypothesis that the matter was "no longer executory in the view of the parties;" and it was the function of equity to perform it so far as it remained unexecuted. For the fulfillment of the intention, he said, a court of equity will consider the moneys thus set apart "as a trust fund to which the stockholders had acquired vested rights—not in their corporate capacity, but as individuals to whom the money legally and equitably belonged distinct from their other interests in the funds and effects of the company." The case of *Jackson's Administrators v. Newark Plankroad Co.* merely held that an action in *assumpsit* would lie against an incorporated company for breach of the contract which the law implied from the relationship of the parties that an equal distribution of dividends will be made among the stockholders. There is

authority for the proposition, *e. g., Kane v. Bloodgood*, 7 *Johns. C. R.* 90, cited by Chancellor Green in the *King case*, that an action at law for money had and received would lie by a stockholder against a corporation for the recovery of a dividend, and that it was not such an express trust as would take the case out of the statute of limitations.

The trust fund theory is a more realistic concept of the substance of the transaction here and the relationship between the parties than that of a mere debt within the operation of the statute of limitations. There was a segregation from the company's funds of the moneys to be devoted to the payment of the dividends. The mere declaration of a dividend by a corporation gives rise to a debt as against it in favor of the individual stockholders; but where "the fund for its payment has been actually set apart and distinguished from the general mass of the company's funds, the fund so set apart becomes a trust fund for the payment of the dividend, which cannot be reached by the general creditors of the corporation, and when it becomes a trust fund for the payment of dividends it cannot be diverted and used for any other purpose. * * * There seems to be a fundamental distinction between a fund set apart for the payment of a dividend and a fund set apart for the payment of an ordinary indebtedness." *Re Interborough Consolidated Corporation*, 288 *Fed.* 334, 32 *A. L. R.* 932 (1923); *certiorari* denied, *Porges v. Sheffield*, 262 *U. S.* 752, 43 *S. Ct.* 700, 67 *L. Ed.* 1215 (1923). Judge Rogers invoked the principle of the English case of *Le Roy v. The Globe Insurance Co.*, cited *supra*, among others. He also adverted to the doctrine that where money is placed by one person in the hands of another for payment to a third person, a trust arises in favor of the latter for which the recipient may be held accountable either at law for money had and received, or in equity as a trustee, for a breach of trust. Reference was also had to the principle that where a charge or claim in the nature of a lien is placed upon property by the owner, a court of equity will establish and enforce it, "not only against the party who stipulated to give it, but also

against third persons who are either volunteers, or take with notice."

For the rule that segregation of funds to meet a declared dividend constitutes the corporation a trustee for the stockholders, see also *Jermain v. Lake Shore & Michigan So. Ry.*, 91 *N. Y.* 483; *Hopper v. Sage*, 112 *N. Y.* 530, 534, 20 *N. E.* 350 (1889); *In re Sutherland*, 23 *Fed.* 2d 595 (1928); *People v. The Bank of Dansville*, 39 *Hun.* 187 (1886); *Lowne v. American Fire Insurance Co.*, 6 *Paige* 482 (1837); *Roehm v. Stetson*, 50 *D. & C.* (*Pa.*) 98, 104 (1943). Where there has been "an actual setting apart * * * of a part of the surplus funds" for the payment of a dividend, the dividend "became the property of the stockholders distributively." *Smith v. Cotting*, 231 *Mass.* 42, 120 *N. E.* 177 (1918).

The principle is rooted in our jurisprudence. In *Breslin v. Fries-Breslin Co.*, 70 *N. J. L.* 274, 287 (*E. & A.* 1904), the old Court of Errors and Appeals ruled that after segregation of the moneys to be devoted to the payment of a dividend, "the corporation, as such, has no property interest in the moneys thus set apart;" the directors "are trustees for the several stockholders, charged with the duty of properly apportioning among them the moneys thus set apart for their use." The trust relationship inheres in the corporate association. Mr. Justice Pitney there cited with approval this statement of the general rule: "The ideal body is, in theory of law, the principal and the board of directors are the managing agents; but, in theory of equity, the body of stockholders are the beneficiaries in a trust and the directors are their trustees."

The liability of the corporation to its stockholders in such circumstances has been likened to that of a bank to its depositors. *Armant v. New Orleans & C. R. Co.*, 41 *La. Ann.* 1020, 7 *So.* 35 (1889); *Larwell v. Burk*, 19 *Ohio Cir. Ct.* 513; *Yeaman v. Galveston City Co.*, 106 *Tex.* 389, 167 *S. W.* 710 (1914).

It results that the limitations of *R. S.* 2:24–1 are not operative to extinguish the stockholders' right to the dividends in question.

And the moneys withheld from the wages of employees for the purchase of Liberty Bonds, class (d), are in the same category.

## III.

It is urged that, for certain reasons presently to be stated, the judgment herein does not serve to absolve the defendant corporation from liability for the payment of claims not barred by the statute of limitations, because (a) the statute under review deprives "the claimants whose claims" are not within .the statute of limitations of their remedy for the enforcement of their contracts and provides no adequate substitute remedy, and (b) the notice of the escheat proceeding prescribed by the statute is entirely inadequate, all in violation of the contract clauses of Article I, Section X of the Federal Constitution and Article IV, Section VII, paragraph 3 of the State Constitution of 1844, now embodied in the same article, section and paragraph of the Constitution of 1947, and the due process clauses of the Fourteenth Amendment of the Federal Constitution and Article I, paragraph 1 of the Constitution of 1844, carried into Article I, paragraph 1 of the Constitution of 1947.

As to (a), it is said that the "only substitute" remedy for the enforcement of the shareholders' contract "is the opportunity to appear, if perchance they have notice of the proceeding, and assert their claim in the escheat proceeding," and to invoke what is deemed a discretionary power to reopen the judgment within two years of the date of its entry, if there be proof of ownership of the property or the right of possession and want of actual knowledge of the escheat proceeding. It is pointed out that in this event the shareholder would not receive his stock, but only the proceeds of sale less the expense incident to the entry of the original judgment. This, it is insisted, lessens the efficacy of the means for the enforcement of the shareholders' contract and impairs the substance and obligation of the contract, and therefore the defendant "is not protected from the claims of the stockholders."

As to (b), it is contended that the statutory procedure does not afford the stockholder "reasonable notice of the pendency of the proceeding and a reasonable opportunity to present his claim." More specifically, it is said that "the contents of the notice as prescribed by the statute" are "entirely inadequate to indicate to any interested party that the proceeding may affect his rights," and also that the "period of publication of the notice" is inadequate. The statute (*R. S.* 2:53–21) provides that the notice shall contain a summary of the order designating the time and place of hearing, as approved by the court, and shall be published in a manner directed by the court and shall also be published once a week for three successive weeks in a newspaper of general circulation designated by the court; and it is urged that the order designating the time and place of hearing is deficient in its failure to specify the character of the property of which escheat is sought and the names and addresses of the last known owners, and the "basis of the alleged escheat," and therefore a "summary of the notice (*sic*) would be no notice whatsoever to anyone." The order provides for a more specific notice directed to the last known owners at their respective last known addresses, stating the nature and character of the property made the subject of the escheat proceeding; but it is maintained that the sufficiency of the statute as to notice is determined by its requirements, not by the notice actually given. The principle of the case of *Wuchter v. Pizzutli,* 276 *U. S.* 13. 48 *S. Ct.* 259, 72 *L. Ed.* 446 (1928), is invoked. It has no application here.

Procedural due process involving property rights takes into account the purposes of the procedure and its effect upon the interests concerned, and all the other circumstances bearing upon the appropriateness of the proceeding to the nature of the case. The fundamental requisite of due process is an opportunity to be heard on such notice as is in keeping with the character of the proceeding and adequate to safeguard the right entitled to protection. *Dohany v. Rogers,* 281 *U. S.* 362, 50 *S. Ct.* 299, 74 *L. Ed.* 904, 68 *A. L. R.* 434 (1930). The proceeding here is *in personam* so far as the

defendant corporation is concerned; and *quasi in rem* as regards the unknown owners or owners whose whereabouts are unknown. Seizure of the property was effected by personal service of process upon the defendant corporation. *Security Savings Bank v. California, supra.* And since personal service of process upon the holder constituted a seizure of the *res,* it is "deemed to supplement the publication as an independent notice, in itself," to the unknown owners of the abandoned property "of the seizure and of their opportunity given by the statute to appear and assert their claims against the state." *Anderson National Bank v. Luckett, supra.* There, the statute provided for the posting of notice of the proceeding on the court house door; and the holding was that "this, in conjunction with the notice provided by the statute itself and by the taking of possession of the bank balances by the state, is sufficient notice to the depositors to satisfy all requirements of due process." Chief Justice Stone said: "The statute itself is notice to all depositors of banks within the state, of the conditions on which the balances of inactive accounts will be deemed presumptively abandoned, and their surrender to the state compelled. All persons having property located within a state and subject to its dominion must take note of its statutes affecting the control or disposition of such property and of the procedure which they set up for those purposes." As we have seen, the State has the same dominion over intangible property that it has over tangible property. *Security Savings Bank v. California, supra.* Procedure of the same character, initiated by the seizure of the *res,* has been sustained as providing adequate notice to absentee owners in escheat actions. *Hamilton v. Brown,* 161 *U. S.* 256, 16 *S. Ct.* 585, 40 *L. Ed.* 691 (1896); *Christianson v. King County,* 239 *U. S.* 356, 36 *S. Ct.* 114, 60 *L. Ed.* 327 (1915).

▇▇ Here, as in the case of *Security Savings Bank v. California,* the statute is not self-executing. The lapse of the prescribed time does not work an immediate escheat. The turnover of the *res* comes only after a judicial determination of the existence of the statutory conditions. There must be

proof that the owner is and has remained unknown for fourteen successive years, or that the owner's whereabouts is and has remained unknown for a like period, or that the *res* is and has remained unclaimed for the same period. A valid claim to the property made prior to the entry of the judgment of escheat prevents its transfer to the State. The notice of the proceeding prescribed by the statute is sufficient to meet the demands of due process. It is all that is practicable in the circumstances. As. stated, it is provided that the notice shall contain a summary of the order fixing the time and place of hearing, as approved by the court, and shall be published once a week for three successive weeks in a newspaper of general circulation designated by the court. Shorter periods have been deemed sufficient where land was involved. *Anderson National Bank v. Luckett, supra.* And it is implicit in the statute that the notice shall identify the property of which escheat is sought and the last known owner. That is of the very nature of the notice thus prescribed. There could not be "notice" within the view of the statute without identification of the subject matter of the proceeding. It does not matter whether the state receives the *res* merely as a depositary or takes it as an escheat. *Security Savings Bank v. California, supra.* The statute provides that the judgment entered thereunder shall operate as an absolute and unconditional release and discharge of the holder of the *res* from liability to any person other than the State Treasurer. *R. S.* 2 :55–23.1.

 The circumstances did not permit of a more effective notice. Moreover, the judgment did not terminate the right to rebut the presumption of abandonment and claim the *res*. This right was reserved to the owner in absolute and unconditional terms for a period of two years after entry of the judgment, exercisable by a motion to reopen the judgment. *R. S.* 2 :53–31. In the performance of this function, the court is not vested with arbitrary discretion. The exercise of the statutory discretion implies conscientious judgment, not arbitrary action. The statutory criteria of ownership or right of possession and a failure of actual notice of the escheat pro-

ceeding control the exercise of the power. When these conditions are met, the court must give judgment for the claimant. In the classic terms of Lord Mansfield, judicial discretion "means sound discretion guided by law. It must be governed by rule, not by humour: it must not be arbitrary, vague, and fanciful; but legal and regular." *Rex v. Wilkes,* 4 *Burr.* 2527, 2539, 98 *Eng. Rep. Full Reprint* 327 (1770). The statute provides no other standard of judicial action. It has in view a mere legal discretion—"a discretion to be exercised in discerning the course prescribed by law; and, when that is discerned, it is the duty of the court to follow it." *Osborn v. The Bank of the United States,* 9 *Wheaten* 738, 866, 6 *L. Ed.* 204 (1824).

In the case of persons missing or unknown, the practicalities and peculiarities of the case are to be regarded in determining the sufficiency of the notice of hearing. In cases of this class, it is not reasonably possible or practicable to give more adequate warning than that afforded by publication. An "indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane v. Central Hanover B. & T. Co.,* 339 *U. S.* 306, 70 *S. Ct.* 652, 94 *L. Ed.* —— (1950). There, a statute permitting trust companies to pool small trust estates into one common fund for investment and administration provided for the publication of notice of a proceeding for the settlement of the trustee's account "addressed generally without naming them to all parties interested" in the common trust fund. The notice required, and the only one given, was by newspaper publication setting forth merely the name and address of the trust company, the name and the date of establishment of the common trust fund, and a list of all participating estates, trusts or funds. It was held that this notice was sufficient as to beneficiaries "whose interests or whereabouts could not with due diligence be ascertained." Mr. Justice Jackson said: "As to them the statutory notice is sufficient. However great the odds that publication will never reach the eyes of such

unknown parties, it is not in the typical case much more likely to fail than any of the choices open to legislators endeavoring to prescribe the best notice practicable." Publication was held insufficient as to known present beneficiaries of known place of residence. In this regard the act was found to be incompatible with the requirements of the Fourteenth Amendment.

Where the procedure is appropriate, neither the due process clause nor any right of the defendant corporation under the contract clause is violated by a law requiring it to deliver to the State property which has long remained unclaimed and presumably has been abandoned. The prescribed notice answers the demands of due process. No other service is feasible in the circumstances. In the nature of things the owners of the property can be treated as persons unknown.

The defendant corporation's capital stock escheated by the judgment were all shares on which dividends had remained unclaimed for more than fourteen successive years immediately prior to the institution of the proceeding. There is in this situation a presumption of abandonment. A different case would be presented if no dividends had been declared during the statutory period, and there was no showing that the owner's whereabouts was unknown for the statutory period.

It is contended also that, for want of a *situs* in New Jersey, the subject choses in action are not escheatable here, and the judgment is *coram non judice*. The defendant corporation is a creature of and is therefore domiciled and resident in New Jersey. *State v. Garford Trucking, Inc.,* 4 *N. J.* 346 (1950). The owners of the escheated obligations are missing or unknown. The property is presumptively abandoned. The sovereignty in which the corporation lives and has its being has dominion over its debtor obligations of this class, through its control of the corporation. *Security Savings Bank v. California, supra; Anderson National Bank v. Luckett, supra.* See, also, *State Tax Commission v. Aldrich,* 316 *U. S.* 174, 62 *S. Ct.* 1008, 86 *L. Ed.* 1358, 139 *A. L. R.* 1436 (1942) ; *Northwest Air Lines v. Minnesota,* 322 *U. S.*

292, 64 *S. Ct.* 950, 88 *L. Ed.* 1283, 153 *A. L. R.* 245 (1944) ; *Connecticut Mutual Life Insurance Co. v. Moore, supra.* The corporation was not absolved of its obligation by the creation of the trust fund with the New York bank for the payment of the declared dividends.

The statute ordains that where the value of the property made subject to escheat is less than $50, publication of any notice may be dispensed with if the court so orders ; and the order here provides that in such cases "the advertisement need not contain the name nor address of such person or corporation." The judgment of escheat included this property ; and to this extent it does not satisfy the demands of procedural due process. The subject matter was not sufficiently identified to constitute adequate notice. Under the statute the State does not proceed administratively to take the property into its protective custody, subject to eventual escheat, as in *Provident Institution for Savings v. Malone,* 221 *U. S.* 660, 55 *L. Ed.* 899 (1911) and *Connecticut Mutual Life Insurance Co. v. Moore, supra,* but rather to subject it to escheat through judicial process, as in *Security Savings Bank v. California, supra;* and so there must be compliance with the requirements of due process. *Vide Anderson National Bank v. Luckett, supra; Connecticut Mutual Life Insurance Co. v. Moore, supra; Roth v. Delano, supra.* But the invalidity of this provision does not affect the remainder of the act. *R. S.* 2 :53–32.

The allowances to counsel and the escheator are subject to revision by the Superior Court in keeping with the decree as herein modified.

The judgment is accordingly modified, and, as so modified, affirmed.

VANDERBILT, C. J. (dissenting). I am in accord with the principles and conclusions expressed in Parts I and II of the majority opinion holding that the State may not take by escheat the property possessed by the defendant when the statute of limitations has barred the owner's right to recover,

and that the State may take by escheat that property which the defendant holds in trust, including its stock and unpaid dividends thereon, but not with that portion of Part III of the opinion dealing with the adequacy of the notice prescribed by the Escheat Act and the status of the defendant to resist the escheat. I am therefore constrained to dissent. To my mind the Escheat Act, *R. S.* 2:53–15 *et seq.*, is fatally defective for lack of the procedural safeguards necessary to satisfy the constitutional requirement of "due process."

The validity of the statute and the proceedings thereunder depend upon the adequacy of the notice prescribed by the statute and not by the notice that may in fact have been given in the particular instance, *Wuchter v. Pizzutti*, 276 *U. S.* 13, 72 *L. Ed.* 446, 45 *Sup. Ct.* 259 (1928); *Weiner v. Wittman*, 129 *N. J. L.* 35 (*Sup. Ct.* 1942). The notice to be given to the owners of the property of which escheat is sought is provided by *R. S.* 2:53–21. It does not require that the names and addresses of the last known owners be given, nor that the character of the property be specified, nor that the basis of escheat be set forth. This notice, moreover, need only be published once a week for three successive weeks in a single newspaper, and the owner to whom it is supposedly directed must file his claim five days before the time fixed for the hearing. Such notice is wholly inadequate when it is borne in mind that the very purpose of the act is to extinguish the rights of persons whose names or whereabouts are unknown. Neither the information contained in the notice, nor the publication of it, nor the time allowed to file a claim are reasonably calculated to inform the owners of the property of the impending proceedings and to give them an opportunity to appear and protect their interests. The notice required by the statute is, in effect, no notice at all to anyone.

Nor do I consider the inadequacy of the notice required by the statute any less important because of the fact that the owners of the escheated property may apply to reopen the proceedings at any time within two years and "upon proof that they were without actual knowledge of such escheat pro-

ceedings, and of proof of ownership of such property or the right to possession thereof, the court *may in its discretion* reopen the decree" and order the State Treasurer to repay the moneys received by the State, less expenses and costs, *R. S.* 2:53–31. Not only does the judgment in the escheat proceeding start the running of the two-year period after which the right of the owner of the property is automatically and forever barred, but the right to recover during the two-year period is not absolute, but within the discretion of the court. In the majority opinion it is stated that the court must enter judgment for the claimant if "the statutory criteria of ownership or right of possession and a failure of actual notice of the escheat proceeding" are proven; that the statute contemplates a "mere legal discretion." With this interpretation I do not agree. If the claimant to the escheated property is entitled to recover upon proof of these two conditions, then the court is not exercising its discretion but following the legislative mandate. In that event the words of the statute "may in its discretion" are of no meaning or effect, and it is not to be considered that the Legislature employed them fruitlessly.

I would reverse the judgment below in its entirety.

Mr. Justice Case has authorized me to state that he joins in this dissent.

*For modification*—Justices HEHER, OLIPHANT, WACHENFELD and BURLING—4.

*For reversal*—Chief Justice VANDERBILT, and Justice CASE—2.