**STARR, Atty. Gen., v. SCHRAM.**

**No. 9610.**

Circuit Court of Appeals, Sixth Circuit.

May 31, 1944.

Arthur L. Fitch and G. Douglas Clapperton, both of Lansing, Mich. (Herbert J. Rushton, Arthur L. Fitch, and G. Douglas Clapperton, all of Lansing, Mich., on the brief), for appellant.

Robert S. Marx, of Detroit, Mich. (Frank E. Wood, Robert S. Marx, Carl Runge, Lawrence I. Levi, and Orville J. Thill, all of Detroit, Mich., and Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This case is here on a second appeal by the Attorney General of Michigan, in the name of and on behalf of the People of that state. All questions properly presented on the former appeal were adjudicated in Starr, Atty. Gen., v. O'Connor, Comptroller of the Currency, 6 Cir., 118 F.2d 548, which was an action for declaratory judgment brought by the attorney general to determine the right, under the then existing state laws of escheat, of the Michigan Board of Escheats to certain dormant deposit accounts in possession of the receiver of a national bank in liquidation.

After the opinion of this court had been filed, the appellee receiver petitioned us for a further declaration of rights not sought in the original pleadings or submitted for determination at the hearings in the district court or here. This supplemental petition asked for the first time an adjudication that the previous assignment by the receiver of certain dormant deposit balances to the State of Michigan should be set aside and that the receiver should be adjudged entitled to maintain an appropriate action for the recovery of any dividends previously paid by him on any such deposit balances to instrumentalities of the State of Michigan. We denied the petition for supplemental adjudication and entered a plain order declaring that: "Inasmuch as the court considers that the opinion filed in this cause is comprehensive of all matters submitted for adjudication on the records, briefs and arguments, the petition of appellee and cross-appellant for any additional declaration of rights is denied."

Following remand, the Receiver filed in the district court a petition for an additional declaration of rights, in which it was prayed that the modified decree to be entered there pursuant to our mandate should declare that the escheat laws of Michigan have been at no time applicable to the First National Bank-Detroit since its suspension on February 11, 1933; that the State of Michigan had never been entitled to assignment of any dormant deposit balances in the defunct National Bank or to any dividends on such deposits; and that the receiver "is entitled to maintain an appropriate action to have the assignment of any such dormant deposit balances to the State of Michigan, its agencies or instrumentalities, cancelled, set aside and held for naught, and is also entitled to maintain an appropriate action for the recovery of any dividends heretofore paid on any such deposit balances to the said State of Michigan, its agencies or instrumentalities."

Among the special defenses raised in the answer of the Attorney General of Michigan to this petition were lack of jurisdiction in the district court over the subject matter, the bar of the statute of limitations of Michigan, res adjudicata resting upon proceedings in the Probate Court of Wayne County, Michigan, and the non-existence of any right of action in the receiver against the state, or any of its agencies, for the recovery of the dormant deposit balances previously assigned by the receiver to the state.

The matter of modification of the decree was heard in the district court upon a stipulation of facts, in which it was provided that either party should not be precluded from producing further or additional evidence not inconsistent with the facts stipulated. Upon conclusion of the hearing, the district court decreed that the escheat statutes of Michigan, including Act 170 of the Public Acts of Michigan for 1941, which was enacted subsequently to our decision in Starr v. O'Connor, supra, constitute an unlawful interference with the liquidation of an insolvent national bank, and are inapplicable to the receivership in the instant case. The district court's decree to this extent was correct. The effect of the enactment of the Michigan Act No. 170 in 1941, is discussed in our opinion in Rushton, Attorney General v. Schram, Receiver, 6 Cir., 143 F.2d 554, filed contemporaneously with this opinion.

But the district court in response to the supplemental petition decreed further that "the transfer, delivery and assignment of

any such dormant deposit balances, or the payment of any dividends thereon, to the State of Michigan, or any of its agencies or instrumentalities, subsequent to February 11, 1933, was void ab initio." It was further decreed that the state account to the receiver for all dividends or moneys paid under the escheat laws to it, or any of its agencies, by the receiver, or his predecessors in office, on any dormant deposit balances appearing on the books of the First National Bank-Detroit, on its suspension date; and that the receiver "have judgment against the State of Michigan for the amount found to be due and owing under said above-described accounting."

■ The declaration in the decree that the assignment by the receiver to the state was void ab initio was too strong and extended beyond any expression of ours in Starr v. O'Connor, supra. The entry of a money judgment against the State of Michigan was clearly erroneous; and was not justified by either decision or discussion in our former opinion. The prayer of the receiver's petition for an additional declaration of rights did not even seek a money judgment, but merely asked a declaration that the receiver is entitled to maintain an appropriate action for the recovery of dividends erroneously paid by his predecessor to the State of Michigan. In the instant matter, an appropriate proceeding in consonance with established law is essential to the award of a money judgment against the State of Michigan. Nowhere in the record do we find an intimation that the Attorney General of Michigan, or any other official authorized to represent the state, consented to the jurisdiction of the United States District Court to decide the issue of whether or not the receiver is entitled to recover any money mistakenly paid by him to the State of Michigan. Suit was filed by the Attorney General in his effort to escheat to the state dormant deposit accounts in possession of the receiver. His complaint tendered no issue of the right of the State of Michigan to retain certain dormant deposit accounts already assigned by the receiver to the state. Nor did the answer of the receiver inject this issue into the case. The question was first raised after this court of review had declared the rights of the parties upon the issues tendered by the pleadings, record, briefs and argument.

■■ A suit against a state, brought by a citizen of another state, is expressly barred by the Eleventh Amendment to the Constitution of the United States. National banks, in so far as concerns the jurisdiction of the United States courts in actions brought by or against them, have, pursuant to federal statute, been held to be citizens of the respective states wherein such banks are located. Continental National Bank v. Buford, 191 U.S. 119, 24 S.Ct. 54, 48 L.Ed. 119. In the absence of their consent, states have been held immune from suits brought against them by their own citizens, or by federal corporations, although such suits are not within the explicit prohibition of the Eleventh Amendment. Principality of Monaco v. Mississippi, 292 U.S. 313, 322, 329, 330, 54 S.Ct. 745, 78 L.Ed. 1282; Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L. Ed. 842; Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140; Duhne v. New Jersey, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280. This is true even though the suit arises under the Constitution and laws of the United States. As was said in Palmer v. Ohio, 248 U.S. 32, 34, 39 S.Ct. 16, 63 L. Ed. 108: "The right of individuals to sue a state, in either a federal or a state court, cannot be derived from the Constitution or laws of the United States. It can come only from the consent of the State."

In any claim, involving a money judgment, made by the receiver against the state, all chosen defenses must be fully available to the state; opportunity to introduce proffered evidence must be afforded; and the claim must be maturely considered by an appropriate tribunal having jurisdiction of the subject matter. It is not incumbent upon this court to suggest what procedure the receiver should pursue.

The decree of the district court, in respects herein indicated, is reversed.