**BLACK, Atty. Gen., on Behalf of PEOPLE OF STATE OF MICHIGAN v. DELANO, Comptroller of Currency of U. S., et al.**

No. 10615.

United States Court of Appeals Sixth Circuit.

Nov. 30, 1948.

Julius H. Amberg, of Grand Rapids, Mich., and Archie C. Fraser, of Lansing, Mich. (Eugene F. Black, Archie C. Fraser, Percival R. Piper, and Irving B. Feldman, all of Lansing, Mich., and Julius H. Amberg, of Grand Rapids, Mich., on the brief), for appellant.

Robert S. Marx, of Cincinnati, Ohio (Robert S. Marx and Lawrence I. Levi, both of Cincinnati, Ohio, Orville J. Thill, of Detroit, Mich., and Frank M. Wiseman, of Cincinnati, Ohio, on the brief; Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, of counsel), for appellee.

Before HICKS, Chief Judge, MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

Our appellate jurisdiction has been repeatedly invoked in litigation involving, in varying phases, the right of the State of Michigan to apply its statutes of escheat to deposits in the First National Bank-Detroit, a national bank in liquidation.

In Starr, Attorney General v. O'Connor, Comptroller of the Currency, 6 Cir., 118 F.2d 548 [decided March 14, 1941]; we reviewed at length the state's escheat laws, construed relevant provisions thereof, and attempted to demonstrate from highest authority that, while national banks are subject to state laws which do not interfere with the purposes of their creation, or tend to impair or destroy their efficiency as federal agencies, or conflict with the paramount law of the United States, the then existing Michigan escheat procedure constituted an unlawful interference with the liquidation of a national bank. We pointed to the decisions of the Supreme Court in Cook County National Bank v. United States, 107 U.S. 445, 448, 2 S.Ct. 561, 27 L.Ed. 537, Davis v. Elmira Savings Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L. Ed. 700 and First National Bank of San Jose v. State of California, 262 U.S. 366, 43 S.Ct. 602, 67 L.Ed. 1030.

After our opinion was promulgated, the legislature of Michigan amended the state laws of escheat by Act No. 170, Public Acts of 1941. In Rushton, Att'y Gen., v. Schram, 6 Cir., 143 F.2d 554 [decided May 31, 1944], we held that the amendatory act did not apply retroactively to dormant deposits in the insolvent First National Bank-Detroit. The majority opinion in that case assumed upon principles of comity that the state legislature had not intended to enact a law, effective retroactively, which would interfere with the complete system provided by Congress for winding up national banks and distributing their effects in a manner neither limited nor enlarged by other statutory provisions with respect to the settlement of demands against insolvents or their estates.

We expressed the further presumption that the Michigan legislature had not designed to nullify the decision of this court in the Starr case, but had enacted a law intended to operate prospectively only. Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692, 151 A.L.R. 824 (which was announced after the filing date of this court's opinion in Starr, Att'y Gen., v. O'Connor, Comptroller of the Currency, supra), was distinguished upon the ground that, there, the Supreme Court's adjudication related to the applicability of a state's laws of escheat to deposits in a solvent and operating national bank. One of our judges, however, based concurrence in the result reached upon the proposition that the Michigan amendatory act operated in the context as an unlawful interference with the liquidation of a national bank as provided for in Title 12, section 194, of the U. S.C.A. The majority opinion did not gainsay this, but attributed to the Michigan legislature no intended interference with the liquidation of the First National Bank-Detroit.

In Starr, Att'y Gen., v. Schram, 6 Cir., 143 F.2d 561 [decided on the same day, May 31, 1944], this court, in unanimity affirmed the decree of the district court to the effect that the escheat statutes of Michigan, including Act 170 of the Public Acts of Michigan for 1941, constitute an unlawful interference with the liquidation of an insolvent national bank and are inapplicable to the receivership of the First National Bank-Detroit. The decree below was reversed in part, but not in respect to the clear-cut holding just stated.

The same statute, Act 170, is involved in the present litigation, which on its merits relates only to the attempt of the State of Michigan to apply its escheat laws to deposits where depositors have had their claims allowed by the receiver, the Comptroller of the Currency, or both, and have, since that time, either died, disappeared, failed to receive or to cash dividend checks issued to them.

Both defendants in the district court, Delano, Comptroller, and Connolly, Receiver, moved to dismiss the instant action. The Comptroller of the Currency, in his special appearance, combined his motion to dismiss with a motion to quash the service upon the ground that he could not, without his consent, be properly sued outside the District of Columbia. The motion of the receiver also challenged the jurisdiction of the district court for the eastern district of Michigan, and additionally pleaded no cause of action.

The district court granted both motions, as made. Assuming without deciding that the action was brought in the right district, we are of opinion that the judgment of dismissal should be affirmed on the merits. The present action brought by the State of Michigan to apply its laws of escheat in the circumstances related constitutes an unlawful interference with the liquidation of a national bank upon the same principles and authority fully discussed in our previous opinions. The valiant spirit displayed in continuing litigation by successive attorneys general of Michigan and able special counsel retained to aid them is commendable, but we think their present battle is fought upon essentially the same legal grounds upon which former contests have been waged. The authorities which they now submit have been previously carefully considered and rejected as failing to sustain their major objective.

968

The fact that we encounter here proven claims rather than dormant deposits supplies no logical basis for a declination to apply settled doctrine. The order of dismissal is affirmed.