ROTH, ATTORNEY GENERAL OF MICHIGAN, *v.*
DELANO, COMPTROLLER OF THE CURRENCY,
ET AL.

No. 24.   Argued October 14, 1949.—Decided November 7, 1949.

*Archie C. Fraser,* Assistant Attorney General of Michigan, and *Julius H. Amberg* argued the cause for appellant. With them on the brief were *Stephen J. Roth,* Attorney General, and *Edmund E. Shepherd,* Solicitor General.

*Stanley M. Silverberg* argued the cause for the Comptroller of the Currency, appellee. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Morison, Paul A. Sweeney, Morton Liftin* and *J. F. Anderson.*

*Robert S. Marx* for Connolly, Receiver, appellee.

MR. JUSTICE JACKSON delivered the opinion of the Court.

The First National Bank—Detroit closed its doors in 1933 and, in its liquidation, dividends on proved claims, small in average but large in the aggregate, have remained for some years in the hands of the federal liquidators, unclaimed by their owners. Since this national banking institution was located in the State of Michigan, Attorneys General of that State have made persistent efforts at different stages of the liquidation to establish a right in the State to escheat the unclaimed dividends. Latest of these was this action, brought by the Attorney General

against the Comptroller of the Currency of the United States [1] and the Receiver of the First National Bank— Detroit, for a declaratory judgment that the Michigan discovery and escheat statute (Michigan Compiled Laws, 1929, Mason's 1940 Cum. Supp., c. 263), as amended by the statute known as Act 170, Public Acts of Michigan for 1941, applies to unclaimed dividends on claims duly proved in the liquidation. The Court of Appeals held the state statute ineffective as "an unlawful interference with the liquidation of a national bank upon the same principles and authority fully discussed in our previous opinions." It affirmed the District Court in dismissing the action "on the merits," adopting the "settled doctrine" of its own prior adjudications. 170 F. 2d 966. However, recourse to these opinions creates some doubt as to whether the Court of Appeals has held the Michigan statute to be invalid for conflict with the Constitution and laws of the United States or inapplicable by intendment of the Michigan Legislature. A review of these cited cases will expose the cause of our uncertainty.

In *Starr* v. *O'Connor*, 118 F. 2d 548 (1941), the then Circuit Court of Appeals reviewed the statutes of Michigan then in force, which did not include Act 170, here involved, and held them applicable to the First National liquidation but unconstitutional under our decision in *First National Bank of San Jose* v. *California*, 262 U. S. 366.

In *Rushton* v. *Schram*, 143 F. 2d 554 (1944), the court considered whether the amendment effected by Act 170 was applicable to the First National receivership at that stage of the liquidation. The court said that it must determine at the threshold whether this Act should be

---

[1] The trial court dismissed as to the Comptroller on the ground it had no jurisdiction over him and the Court of Appeals did not pass on the contention that he is a necessary party. 170 F. 2d 966, 967.

construed as retroactive in effect; that is, whether it applied to a liquidation commenced before its passage. This, of course, was a state law question and it was decided by reference to state decisions. The court construed the Act, in the light of Michigan decisional law, not to apply retroactively. It is true that the court there reviewed federal decisions to show that it would raise a serious question of constitutionality if the Act were construed otherwise. But *Anderson National Bank* v. *Luckett,* 321 U. S. 233, had intervened and in reference to it the Court of Appeals said, "In the light of that fresh authority, we do not say that if invoked for prospective application, and in a manner consistent with the federal statutes, the Michigan statute would conflict with the national banking laws and constitute an unlawful interference with the liquidation of a national bank. Discussion of that problem is deemed inappropriate in view of our conclusion that the Act under consideration carries no retroactive effect in the present situation." 143 F. 2d at 559.

In *Starr* v. *Schram,* 143 F. 2d 561 (1944), the Court of Appeals on the same day passed on the receiver's request for a declaration that the escheat laws were at no time validly applicable to the receivership and that he was entitled to recover back certain dormant deposit balances and the dividends thereon which already had been paid over to the State pursuant to the Act. The District Court had held that the state statute was invalid as an "unlawful interference" with the federal liquidation. This holding the Court of Appeals affirmed but, on considerations of state immunity from suit, it refused to allow recovery of what had been paid over.

Now comes *Black* v. *Delano*—the present case, Roth being substituted for Black—170 F. 2d 966 (1948), which the Court of Appeals rests on the "settled doctrine" of these cases.

*Anderson National Bank* v. *Luckett, supra,* in substance, held that the Constitution of the United States does not prohibit a State from escheating deposits in a national bank located and actively doing business therein, abandoned by their owners or belonging to missing persons. The State, after a reasonable lapse of time may lawfully administer such assets, holding them for the benefit of the disappeared claimant or the missing owner for a period and providing for eventual escheat. This it may do through appointment of a personal representative, or a public administrator, or by utilizing its own public officials. We held that mere putting of the State itself, or its duly named officer, in the shoes of the claimant to take what the bank would otherwise be obliged to disburse to the claimant himself does not burden, obstruct or frustrate a going bank in discharging its federal functions. We also held no interference with a bank's federal function to result from a mere requirement that it make a report to the State of unclaimed property, any more than from a requirement that it report to the State tangible property therein for the purposes of taxation, and nothing in our decisions suggests that such a disclosure would be an interference with the liquidation function. It would not seem too much to ask that a federal officer, possessed of property claimed by the State to be subject to its taxing or escheat power, make reasonable disclosure thereof to such authority as the State designates. It is but a decent comity between governments.

Of course, these basic and general rights of the State, including the enforcement of its claims, might be asserted at a time, in a manner or through such means as to interfere with the federal function of orderly liquidation or to conflict with federal law; but absent such interference with a federal statute, the basic assumption of the State here that nothing in the Constitution prevents it from escheating the specific claims here involved is made

clear in our recent decisions. *Anderson National Bank* v. *Luckett, supra.* See also *Connecticut Mutual Life Insurance Co.* v. *Moore,* 333 U. S. 541.

Reiteration of these general principles does not, of course, determine whether any peculiarity in the operation of Act 170 would go beyond the right of the State and constitute an unreasonable burden on federal functions of the receiver. But this question is not appropriate for decision here. If the judgment below rests, as well it may, upon earlier decisional law of the Circuit which held that this Act was not intended to apply to receiverships beginning before its enactment, we would hardly review such construction of the State Act. And there is a further reason why we should not now decide the principal question. Michigan has repealed Act No. 170 by Act 329, Public Acts of Michigan for 1947, reserving, however, from the effect of the repeal any "pending suit or proceeding." A possible consequence is that no new suit or proceeding could be maintained to enforce the repealed Act. Thus, to now decide this suit for a declaratory judgment might be to render an advisory opinion on the constitutionality of a repealed State Act. And, of course, a State cannot by reservation, any more than by affirmation, confer upon us the power or impose upon us the duty to render an advisory opinion.

In view of these considerations, we vacate and remand to the Court of Appeals for such action as it may consider appropriate in the light of the foregoing opinion.

*Judgment vacated.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.