## In the Matter of NORTHEAST UTILITIES.

### Civ. No. 12168.

United States District Court,
D. Connecticut.

Sept. 17, 1979.

---

Michael F. Halloran, Day, Berry & Howard, Hartford, Conn., for plaintiff.

Robert E. Walsh, Asst. Atty. Gen., Carl Ajello, Atty. Gen., Hartford, Conn., for the State of Connecticut.

RULING ON APPLICATION OF NORTHEAST UTILITIES FOR AN ORDER ALLOWING TERMINATION OF A CORPORATE SIMPLIFICATION PLAN PURSUANT TO § 11 OF THE PUBLIC UTILITY HOLDING COMPANY ACT OF 1935

CLARIE, Chief Judge.

Northeast Utilities (Northeast) is a Massachusetts business trust, registered as a public utility holding company with the Securities and Exchange Commission (SEC) pursuant to the Public Utility Holding Company Act of 1935[1] (the Act). Northeast has petitioned the Court for an order allowing termination of a corporate simplification plan pursuant to § 11 of the Act. The requested termination order would cancel the rights of those persons who have not appeared to claim their property under the Plan and would direct that all of the unclaimed property be delivered to Northeast free and clear from any claims of the persons for whose account the property was being held. The State of Connecticut, through its State Treasurer, has asserted a claim to this property under the State's abandoned property and escheat laws. (Conn.Gen.Stat. §§ 3–56a to 3–74a (1958 and West Supp.)). For the reasons set forth below, the Court finds that the relevant Connecticut escheat statutes do not conflict with the federal Act and that the State has a valid claim to certain of the property presently being held by the petitioner.

### Statement of Facts

In 1966, Northeast owned 98.63% of the common stock of The Connecticut Light and Power Company (CL&P) and 98.77% of common stock of The Hartford Electric Light Company (Helco). The remaining common shares of these Northeast subsidiaries were owned by various public investors, thus creating minority interests that placed all three business enterprises in violation of § 11(b)(2)—the corporation simplification provisions—of the Act.[2] In order to comply with the Act, Northeast submitted to the SEC a plan designed to eliminate these publicly held minority interests.

The SEC approved the Plan (HCA Release No. 15808; August 7, 1967) and petitioned this Court for an order of enforce-

1. 15 U.S.C.A. §§ 79 to 79z–6 (1971 and West Supp.1979).

2. The relevant provisions of § 11(b)(2) of the Act provide as follows:

ment pursuant to §§ 11(e) and 18(f) of the Act. On November 20, 1967, this Court issued an Order carrying out the proposed Plan and authorized Northeast to designate a time, subject to SEC approval, for the "consummation" of the Plan. Northeast thereupon fixed December 26, 1967 as the Plan's "consummation date."

The Plan provided that Northeast would issue shares of its common stock in exchange for the publicly held common shares of the two subsidiaries—CL&P and Helco—at an exchange ratio set forth in the Plan. Pursuant to this Plan, on December 26, 1967, Northeast issued and delivered to Old Colony Trust Company, the exchange agent under the Plan,[3] certificates for the common shares of Northeast deliverable under the Plan. From this date to the present, the exchange agent has held these shares for the account of the former public shareholders of CL&P and Helco common stock. In accordance with the Plan, whenever Northeast declared a dividend on its common shares, that declaration included dividends on all common shares to be delivered under the Plan by the exchange agent.

The Plan further provided that as of its consummation date, the public holders of CL&P and Helco common stock certificates would no longer have any rights as stockholders of the subsidiaries. That is, from December 26, 1967 forward, persons holding certificates for the common stock of CL&P and Helco were entitled only to exchange such certificates for common shares of Northeast, and Northeast became the owner and holder of the CL&P and Helco common stock theretofore held by the public. Thus, the essential purpose of the Plan—elimination of the publicly held minority interests in the common stock of CL&P and Helco[4]—was accomplished on December 26, 1967, the consummation date of the Plan. Northeast became the sole shareholder of CL&P and of Helco at this time and thereby brought all three business enterprises into compliance with the corporate simplification provisions of the federal Act.

The only provisions of the Plan that remained to be effectuated after the consummation date involved Northeast's duty to notify the former CL&P and Helco shareholders of their right to exchange their CL&P and Helco certificates for shares of Northeast common stock. The November 20, 1967 Order of this Court provided that on the expiration of five years after the consummation date of the Plan, the Court would enter an Order terminating Northeast's obligations under the Plan provided, *inter alia*, that "a proper showing shall have been made to this Court of reasonable efforts to locate all public shareholders of such companies whose securities are to be exchanged under the Plan" and "subject to such conditions as this Court may prescribe in such Order." The 1967 Order further provided that upon the issuance of a termination order by this Court, "all of the rights

---

"(b) It shall be the duty of the Commission, as soon as practicable after January 1, 1938:

(2) To require by order, after notice and opportunity for hearing, that each registered holding company, and each subsidiary company thereof, shall take such steps as the Commission shall find necessary to ensure that the corporate structure or continued existence of any company in the holding-company system does not unduly or unnecessarily complicate the structure, or unfairly or inequitably distribute voting power among security holders, of such holding-company system."

The SEC determined that the electric properties of the Northeast system constitute an integrated public utility system under the standards of the Act. *See* Northeast Utilities, et al.,

HCA Release No. 15448 at 6 (April 13, 1966). The SEC has long held that the existence of a publicly held interest in the common stock of one or more of several public utility companies comprising an integrated public utility system constitutes an undue and unnecessary complexity and results in an inequitable distribution of voting power in violation of the standards of § 11(b)(2) of the Act, and that the elimination of such an interest is required thereunder.

3. *See* Exhibit G filed by Northeast (SEC Certificate of Consummation of Transaction).

4. For an examination of the essential purpose of the Northeast corporate simplification plan and the policy underlying the Act, see the Court's discussion *supra*.

of such holders will terminate, and the remaining unexchanged shares of Northeast held by the exchange agent together with any cash or other property so held will be delivered to Northeast free from any claim of the persons for whose accounts they were held." In its 1967 Order, however, the Court reserved jurisdiction "to entertain such further proceedings, to make such further findings, to take such further action, and to grant such other and further relief as it may deem appropriate in connection with the Plan . . . ."

Northeast has now applied to this Court for an appropriate termination order. At a hearing held shortly after Northeast presented this Application, the Court raised *sua sponte* the issue of whether the abandoned property and escheat laws of Connecticut (Conn.Gen.Stat. §§ 3–56a to 3–74a (1958 and West Supp.)) might apply to the unclaimed property described above. On December 18, 1978, in response to a show cause order issued by the Court, counsel for Northeast and the State appeared to present their respective positions on the matter at bar.

### Discussion of the Law

■ The Court must first determine whether the laws of Connecticut, standing alone, operate to entitle the State to any of the property held by Northeast or the exchange agent. Second, the Court must ascertain whether the relevant state law conflicts with either the provisions of or the policies underlying the Public Utility Holding Company Act of 1935. In the event the Court were to find genuine conflict, then state law would be required to yield to the federal statute.[5]

Section 3–59a(a) of the Connecticut General Statutes provides that

"[a]ny stock or other certificate of ownership, or any dividend . . . or other

sum held or owing by a business association for or to a shareholder, certificate holder . . . or other security holder . . . who has not claimed it or corresponded in writing with the business association concerning it within ten years after the date prescribed for payment or delivery, is presumed abandoned . . ."

Section 3–61a similarly provides that

"[a]ll property and any income or increment thereon held in a fiduciary capacity for the benefit of another person is presumed abandoned unless the owner has, within ten years after it became payable or distributable, increased or decreased the principal, accepted payment of principal or income, corresponded in writing with the fiduciary concerning the property or otherwise indicated an interest as evidenced by a memorandum on file with the fiduciary . . . ."

■ On December 26, 1967, the consummation date of the Plan, the shares of Northeast common stock and the dividends which had accrued thereon that were being held by the exchange agent under the Plan became "payable or distributable" to the former public CL&P and Helco shareholders. To claim their property, these persons needed only to demonstrate their right to the property by producing their certificates for CL&P or Helco common stock. Ten years after the consummation date, therefore, the shares of Northeast common stock and accrued dividends which remained unclaimed and in the possession of Northeast or its agent became property "presumed abandoned" within the meaning of the Connecticut statutes. More precisely, because Northeast is a "business association doing business in [Connecticut] but not organized under the laws of or created in [Connecticut]," the only property that is presumed abandoned in Connecticut is the property

**5.** Section 11(b)(2) of the Public Utility Holding Company Act of 1935 constitutes a valid exercise of Congressional federal power under the commerce clause of the United States Constitution. *See American Power & Light Co. v. Sec. & Exch. Comm'n,* 329 U.S. 90, 96–104, 67 S.Ct. 133, 91 L.Ed. 103 (1946). Thus, the supremacy clause of the constitution (Art. VI, § 2) renders invalid any state statutes or laws that conflict with or frustrate the federal policies of § 11(b)(2) of the Act. *See Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 29, 5 L.Ed. 302 (1824); *Phillips v. Sec. & Exch. Comm'n,* 153 F.2d 27, 28–29 (2d Cir.), *cert. denied,* 328 U.S. 860, 66 S.Ct. 1350, 90 L.Ed. 1630 (1946).

for which the "records of [Northeast] indicate that the last-known address of the person entitled thereto is in [Connecticut]." Conn.Gen.Stat. §§ 3–59a(a)(2), 3–61a (1958 and West Supp.1979).

Under the Connecticut statutes, Northeast became obligated to deliver the "abandoned property" described above to the State treasurer by March 1, 1978. *See* Conn.Gen:Stat. § 3–65a(b) (West Supp. 1979). Once Northeast delivers such property to the State, the treasurer must sell the Northeast shares "in the manner customary in that market" and must then hold the sale proceeds, along with the other property delivered by Northeast, for at least twenty years. The true owners of property presumed abandoned may claim their property from the State within twenty years from the last day of the calendar year in which such property is presumed abandoned. *See* Conn.Gen.Stat. §§ 3–68a(a), 3–70a(a) (West Supp.1979).

The Court finds that Connecticut law requires that Northeast deliver to the Connecticut treasurer all property held pursuant to the corporate simplification plan that remains unclaimed by a former CL&P or Helco shareholder whose last-known address is in Connecticut. The issue remains, however, whether the state statutory scheme conflicts with the federal policies embodied in the Public Utility Holding Company Act of 1935. The Court finds that no conflict exists.

■ It is generally recognized in the law that the mere presence and operation of a federal regulatory statute does not in every case preempt state laws which provide for the appropriation by the state of presumptively abandoned property and its eventual escheat to the state. *See Roth v. Delano*, 338 U.S. 226, 230–31, 70 S.Ct. 22, 94 L.Ed.2d 13 (1949); *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 247–53, 64 S.Ct. 599, 88 L.Ed. 692 (1943). *Roth* involved the liquidation of a national bank. As a result of that liquidation plan, certain dividends on proved claims remained in the hands of federal liquidators, unclaimed by their owners. The Supreme Court ruled that absent a clear showing of interference with the federal function of orderly liquidation or of conflict with federal law, there is nothing in the Constitution to prevent a state from escheating the property claims involved. *Roth*, 338 U.S. at 230–31, 70 S.Ct. 22. Finding no conflict nor any interference with the federal liquidation plan, the Court held for the State. *Id.*

■ Turning now to the matter at bar, the Court finds that no material conflict exists between the Connecticut abandoned property and escheat statutes and the relevant provisions of or policies underlying the Public Utility Holding Company Act of 1935. Section 11(b)(2) of the Act provides simply that the SEC

"shall take such steps as the Commission shall find necessary to ensure that the corporate structure or continued existence of any company in the holding-company system does not unduly or unnecessarily complicate the structure, or unfairly or inequitably distribute voting power among security holders, of such holding-company system."

As noted in the corporate simplification plan submitted by Northeast (Exhibit A at 3), the SEC has long held that the existence of a publicly held interest in the common stock of one or more of several public utility companies comprising an integrated public utility system constitutes an undue and unnecessary complexity and results in an inequitable distribution of voting power in violation of § 11(b)(2) of the Act. Accordingly, Northeast stated in its Plan that the purpose of the Plan was "to enable Northeast and its subsidiaries to comply with the provisions of § 11(b)(2) of the Act by eliminating the publicly held minority interests in the common stock of CL&P and of Helco . . . ." Exhibit A at 4. This purpose was accomplished and the policy of the Act effectuated on the consummation date of the Plan—December 26, 1967.

As explained above, on the consummation date, the publicly held minority interests were eliminated and Northeast became the owner and holder of the CL&P and Helco common stock theretofore held by the public. The Connecticut statutes in no way conflict with the provisions of the federal Act nor do they frustrate the federal policy

of eliminating publicly held minority interests. The State merely stands in the shoes of the former CL&P and Helco shareholders who could not be located and undertakes the protection of their abandoned claims. The State thus succeeds to the rights that these unlocated shareholders possessed under the Plan.

Northeast relies heavily on the decision in *In Re Standard Gas and Electric Company*, 301 F.Supp. 1382 (D.Del.1969), *aff'd per curiam*, 433 F.2d 139 (3d Cir. 1970). In that case, the Standard Gas and Electric Company (Standard) had submitted a Plan of Liquidation and Dissolution under § 11 of the Act that called for distributions of property to the Standard shareholders. The Plan provided that the rights to distributions of property were to be cut off from the Standard stockholders who failed to assert their claims within a certain period of time and that the unclaimed property was to be distributed among the known and identified stockholders of Standard who had perfected their rights to liquidation distributions. New York asserted a right to this unclaimed property under its Abandoned Property Law. In rejecting New York's claim, the court in *Standard Gas* stated that the § 11 Plan under review

> "constitutes the implementation of a Federal statute and embodies specific federal policy of barring stockholder claims after reasonable notice and making a tontine-type distribution of remaining funds an appropriate mode for effectuating the provisions of the Act."

First, it must be noted that the *Standard Gas* court cited no authority and gave no explanation for its assertion of a "federal policy of barring stockholder claims after reasonable notice." Second, the court in *Standard Gas* aptly emphasized that the Standard Plan involved a liquidation and that the unclaimed property was to be distributed directly among those Standard shareholders who could be located. (The court called this a "tontine-type distribution.") Since the cost of sending notice to shareholders under the Plan fell on all of the shareholders by reducing the common fund, the court reasoned that it was fair to distribute the unclaimed property to the

located shareholders who had in effect born the expense of effectuating the notice provisions of the Plan. In contrast, the Northeast Plan calls for the unclaimed property to be appropriated by the Northeast business association, not distributed among the other shareholders as was the case in *Standard Gas*. The Court accordingly holds that the abandoned property and escheat provisions of the Connecticut statutes do not frustrate any federal policy sought to be implemented by the Northeast corporate simplification plan.

Nothing herein shall preclude the distribution to those CL&P and Helco certificate holders who have pending applications to claim their shares of Northeast common stock, together with accrued dividends and increments, prior to the filing of a final judgment herein. Counsel for Northeast and the State of Connecticut should submit proposed settlement orders consistent with this Ruling within ten (10) days.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court, pursuant to Rule 52(a), Fed.R.Civ.P.

SO ORDERED.