**STATE OF ARIZONA, et al.,**
**Appellants,**

v.

**Charles A. BOWSHER, in his Official Capacity as Comptroller General of the United States, et al.**

**STATE OF ARIZONA the States of Minnesota, Ohio and Florida,**
**Appellants,**

v.

**Charles A. BOWSHER, in his Official Capacity as Comptroller General of the United States, et al.**

**Nos. 90–5184, 90–5223.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 8, 1991.

Decided June 11, 1991.

As Amended June 11, 1991.

---

D.C.CODE ANN. § 1–2525(a) (Repl.1987).

Andrew P. Miller, with whom Bernard Nash, Peter J. Kadzik and Frank F. Flegal were on the brief, for appellants State of Ariz., et al. in No. 90–5184.

Joe A. Walters, with whom Donald S. Arbour and E. William Crotty were on the brief, for appellants States of Minn., Ohio and Fla. in No. 90–5223.

Deborah Ruth Kant, Attorney, Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty. and Barbara C. Biddle, Atty., Dept. of Justice, were on the brief, for appellees in Nos. 90–5184 and 90–5223.

Before EDWARDS, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

By statute, the United States Department of the Treasury exercises custody over funds "represent[ing]" money that federal agencies owe to American citizens whose whereabouts are unknown. Twenty-three states claim a right to assume custody over these funds pursuant to their custodial taking laws. The district court held that the Supremacy Clause, art. VI, cl. 2, bars the states' claim. See *Alabama v. Bowsher*, 734 F.Supp. 525 (D.D.C.1990).[1] We agree.

\* \* \*

31 U.S.C. § 1322 requires the Secretary of the Treasury to

> transfer to the Treasury trust fund receipt account 'Unclaimed Moneys of Individuals Whose Whereabouts are Unknown' that part of the balance of a trust fund account named in section 1321(a)(1)–(82) of this title or an analogous trust fund established under section 1321(b) of this title that has been in the fund for more than one year and represents money belonging to individuals whose whereabouts are unknown. Subsequent claims to the transferred funds shall be paid from [this account].

---

1. The district court also ruled that the states had failed to exhaust the applicable administrative remedies. As the government does not press this issue on appeal, we do not consider it.

Section 1321, in turn, sets up trust funds for such diverse sources of federal debt as funds of federal prisoners (§ 1321(a)(21)), pay of the Navy (§ 1321(a)(23)), certain unclaimed condemnation awards (§ 1321(a)(53)), and miscellaneous trust funds of Indian tribes (§ 1321(a)(67)). To fulfill its statutory duty, the Treasury has set up two holding accounts, "account 20X6133" and "account 1060", from which (as a general matter) it disburses money to claimants after the owing agency authorizes the payment. See generally 31 U.S.C. §§ 3325, 3528; I Treasury Financial Manual 6–3000 ff.

Acting under their unclaimed property statutes, see, e.g., Ariz.Rev.Stat.Ann. §§ 44–301 to –340 (1956 & Supp.1990), twenty-three states assert a right to custody of the money that the Treasury currently holds to pay federal debts to citizens of those states. The states claim no escheat; they seek only temporary custody over the money until the rightful owners appear with valid claims. (In truth, of course, many of the rightful owners will never show up.)

■ Under the intergovernmental immunity component of Supremacy Clause jurisprudence, the states may not directly regulate the federal government's operations or property. See Hancock v. Train, 426 U.S. 167, 178–80, 96 S.Ct. 2006, 2012–13, 48 L.Ed.2d 555 (1976); see also North Dakota v. United States, — U.S. —, 110 S.Ct. 1986, 1995, 109 L.Ed.2d 420 (1990) (plurality op.); id. 110 S.Ct. at 2003–07 (opinion of Brennan, J.); McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819). Indeed, the Constitution itself specifies that Congress retains the "[p]ower to dispose of and make all needful Rules and Regulations respecting the ... Property belonging to the United States...." U.S. Const., art. IV, § 3, cl. 2. The issues before us, then, are whether the federal government has a property interest in the relevant accounts, and, if so, whether the states' claims here are attempts to regulate that interest.

■ When the United States sets aside money for the payment of specific debts, it does not thereby lose its property interest in that money. Thus, in Buchanan v. Alexander, 45 U.S. (4 How.) 20, 20–21, 11 L.Ed. 857 (1846), the Supreme Court prohibited creditors from garnishing money held by the purser of the frigate Constitution to pay its seamen's wages, reasoning that "[s]o long as money remains in the hands of a disbursing officer, it is as much the money of the United States, as if it had not been drawn from the treasury." See also In re Joliet–Will County Community Action Agency, 847 F.2d 430, 432–33 (7th Cir.1988) (reaffirming Buchanan's authority and applying it to federal funds held by a federal grantee as trustee to carry out the grant); Palmiter v. Action, Inc., 733 F.2d 1244, 1247 (7th Cir.1984); Haskins Bros. & Co. v. Morgenthau, 85 F.2d 677, 681 (App.D.C.1936) (applying the United States's immunity as sovereign to federal funds even though they were earmarked for a specific purpose). The money here is federal money. That various persons have claims against the United States in amounts exactly matching the funds, and intended by Congress to be paid from these funds, does not give those individuals a property interest in the money.

Thus, the states' plan would amount to direct regulation of federal property. In extracting funds from the Treasury, the states would effectively subordinate federal property to their own laws and appropriate that property, at least for a period, for themselves. While the states protest that they merely wish to "further[ ] the federal government's presumed purpose to return the unclaimed property to its true owners," Reply Br. of Alabama et. al. at 13, the Supremacy Clause does not permit them to take over a federal program just because they think they can do it better.

■ The outcome would be the same if we approached the Supremacy Clause analysis as a matter of preemption. A federal statute preempts a state law where the latter "stands as an obstacle to the accomplishment and execution of the full objectives of Congress." See Louisiana Public Service Comm'n v. FCC, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90

L.Ed.2d 369 (1986); see also *Fidelity Federal Savings & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). In passing § 1322, Congress was concerned to preserve or advance the convenience both of the claimant in securing payment and of the government in making it. As one architect of § 1322 noted:

> This proviso is simply a time-saving bookkeeping device. Its object is to put all unclaimed money accounts under one head, so that they may be identified on the books of the Government. The transfer does not impair the principal of the fund or make the unclaimed moneys less available. On the contrary, it really makes them more easily identifiable and, if anything, more accessible when the parties who are entitled to them turn up to claim them.

78 Cong.Rec. H8244 (daily ed. May 7, 1934) (statement of Rep. Griffin); see also *Permanent Appropriations: Hearing Before the Subcomm. of the House Comm. on Appropriations*, 73d Cong., 2d Sess. at 216–27 (1934) ("Hearing") (statement of Rep. Griffin). Although some members of Congress questioned whether § 1322 was well suited to the stated goals, see Hearing at 354; cf. *id.* at 526, 916, that is irrelevant here; our acceptance of the states' position would plainly thwart Congress's aims. Transferring the money from the Treasury to the states would surely make it less, not more, accessible to claimants, who presumably picture the federal government as the relevant payor. Alternatively, for the federal government to send the money off to a state, and then recoup it for purposes of payment, would multiply the transactions needed to accomplish the otherwise fairly simple federal objective. Few plans would more straightforwardly obstruct "the accomplishment and execution of the full objectives of Congress".

The states seek to bolster their position by suggesting that their custodial takings laws come to us with a patina of ancient history. To a large extent that patina belongs only to escheat provisions, which these are not. In any event, "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." *Fidelity Federal*, 458 U.S. at 153, 102 S.Ct. at 3022, quoting *Free v. Bland*, 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962).[2]

As to some of the trust funds, escheat of the claimant's right might well substitute the state for the claimant and entitle it to payment. This would clearly *not* be true for claims that by federal law expire as a result of the events that trigger escheat under state law (e.g., death intestate without heirs). Obviously nothing we say prevents state substitution for the claimant where that is consistent with § 1322 and other relevant federal statutes. See generally *United States v. Klein*, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1938). That the Supreme Court has treated escheat and custodial takings the same way in some contexts, see, e.g., *Texas v. New Jersey*, 380 U.S. 518, 85 S.Ct. 1136, 14 L.Ed.2d 49 (1965), does not make them equivalent in all contexts, and particularly not here, where the need for the distinction is manifest.

Appellants rely heavily on *Roth v. Delano*, 338 U.S. 226, 70 S.Ct. 22, 94 L.Ed. 13 (1949), where the Supreme Court permitted a state to escheat abandoned accounts in a failed national bank. But neither *Roth* nor its predecessor, *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944), which dealt explicitly with custodial takings as well as escheat, is controlling. Both cases involved state efforts to apply their unclaimed property statutes to national banks, which, though subject to heavy federal regulation, are nongovernmental firms. Both opinions emphasized that the state laws did not frustrate any discernible purpose underlying either the federal banking laws or any other federal statute. See *Roth*, 338 U.S. at 230, 70 S.Ct. at 24; *Anderson Nat'l Bank*, 321 U.S. at

---

**2.** The argument of three states that the Tenth Amendment forbids Congress to maintain custodial possession of the moneys is without merit.

248–49, 64 S.Ct. at 607–08. Here, by contrast, § 1322 seeks to advance the convenience of the federal government and its creditors by establishing specific federal accounts with which the states propose to interfere.

\*     \*     \*

The judgment of the District Court is affirmed.

*So ordered.*