**In re FEDERATED DEPARTMENT STORES, INC. and Allied Stores Corporation, et al., Debtors.**

**In re ALLIED STORES CORPORATION, Allied Stores Credit Corp., Allied Stores Credit Holdings Corporation, Allied Stores General Real Estate Company, Allied Stores Marketing Corporation, Block's, Inc., Bloomingdale's By Mail, Ltd., Bloomingdale's, Inc., The Bon, Inc., Burdine's, Inc., Douglaston Plaza, Inc., Federated Acceptance Corp., Fed-**

erated Department Stores, Inc., Gold Circle, Inc., Goldsmith's, Inc., Hampton Bays Plaza, Inc., Jordan Marsh Stores Corp., Jor–Mar, Inc., Maas, Inc., Retail Service, Inc., Rich's, Inc. and Stern's, Inc.

Consolidated Bankruptcy No. 1–90–00130.

Bankruptcy Nos. 1–90–00131, 1–90–00142, 1–90–00143, 1–90–00140, 1–90–00141, 1–90–00157, 1–90–00139, 1–90–00132, 1–90–00135, 1–90–00134, 1–90–00170, 1–90–00171, 1–90–00130, 1–90–00173, 1–90–00174, 1–90–00176, 1–90–00136, 1–90–00177, 1–90–00138, 1–90–00145, 1–90–00133 and 1–90–00137.

United States Bankruptcy Court, S.D. Ohio, W.D.

Jan. 8, 1992.

Fred J. McGavran, Frost & Jacobs, Cincinnati, Ohio, Maryann B. Gall, Steven J. McDonald, Jones, Day, Reavis & Pogue, Columbus, Ohio, for petitioner.

David Epstein, Boston, Mass., Thomas G. Schroeter, Bernard Nash, Edward Modell, Dickstein, Shapiero & Moren, Washington, D.C., for respondent.

## ORDER GRANTING DEBTORS' OBJECTION TO STATE PROOFS OF CLAIM UNDER STATE ABANDONED PROPERTY LAWS

J. VINCENT AUG, Jr., Bankruptcy Judge.

### INTRODUCTION

The States of Arkansas, California, Colorado, Connecticut, Delaware, Idaho, Illinois, Indiana, Iowa, Maine, Missouri, Montana, New Jersey, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, Utah and Washington, and the Commonwealths of Kentucky, Maryland and Pennsylvania (collectively "States") have filed claims for that property of the Debtors which would qualify as abandoned property under the various States' abandoned property laws. On March 13, 1991, the Debtors filed their Objection to State Proofs of Claim Under State Unclaimed Property Laws (Doc. 3771), which was followed by a First Amendment (Doc. 5164) and a Second Amendment (Doc. 5261) thereto. The Objection was supported by the Official Committee of Unsecured Creditors and Official Committee of Bondholders of Allied Stores Corporation (Doc. 5525) and the Official Committee of the Federated Unsecured Creditors, the Official Committee of the Federated Pre-merger Bondholders and the Official Committee of the Federated Bondholders (Doc. 5527). New York State filed its separate Response (Doc. 4216); Arkansas and 16 other states filed their Response (Doc. 5634). Debtors then filed their Reply Memorandum (Doc. 5963). The hearing on the Objection was held on October 24, 1991, at which time the parties filed a Stipulation of Facts and Authenticity of Documents (Doc. 6217). At the request of the Court, Post–Hearing Briefs were filed by the Debtors and Arkansas and 16 other states (Docs. 6501 and 6497 respectively).

In accordance with Local Bankruptcy Rule 5.6(d), the claims of the nonresponding states, California, Ohio, Oregon, Rhode Island, and South Carolina, and the Commonwealths of Kentucky and Maryland are hereby disallowed by virtue of their failure to respond to the Debtors' Objection.

We hold the remaining States' claims[1] to be preempted by the federal Bankruptcy Code as more fully set forth below.

I. *The States' Claims Directly Conflict With and Are Therefore Preempted by Federal Bankruptcy Law*

■ The proper standard for supremacy clause analysis is set forth in *Louisiana Pub. Serv. Comm'n. v. Federal Communications Comm'n.*, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). In that case, the Supreme Court clearly delineated the cases where federal preemption of state law would occur:

1. Where Congress, in enacting a federal statute, expresses a clear intent to preempt state law;

2. Where there is outright or actual conflict between federal and state law;

3. Where compliance with both federal and state law is in effect physically impossible;

---

1. The remaining States' claims were more clearly defined at the October 24, 1991 hearing and by Post–Hearing Brief to be for that property which was presumed abandoned under each State's abandoned property laws prior to the filing of the Debtors' petitions on January 15, 1990, and which property was not previously reported and paid by the Debtors as well as for that property which had become presumptively abandoned since January 15, 1990.

4. Where there is implicit in federal law a barrier to state regulation;

5. Where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the states to supplement federal law; or

6. Where the state law stands as an obstacle to the accomplishment and execution of the full objective of Congress.

*Id.* at 368–69, 106 S.Ct. at 1898. In short, if there is a conflict between state law and federal law, the latter shall prevail. The States' claims, based on the States' abandoned property laws, run afoul of the Bankruptcy Code in no less than three applications.

The States have cited several cases for the proposition that class proofs of claim for unknown persons are valid; however, the cases are either distinguishable or are overcome by cases directly on point. In *In re Evans Products*, 60 B.R. 863 (S.D.Fla. 1986), where the Federal Trade Commission had filed a proof of claim based upon a then-pending action it had filed against the debtor which sought equitable relief, including restitution, on behalf of an estimated 10,000 customers of the debtor, the District Court merely allowed an estimation of the claim for purposes of its allowance pursuant to 11 U.S.C. § 502(c). In the line of cases cited by the States involving claims by the Department of Energy, *e.g., DOE v. West Texas Marketing Corp.*, 763 F.2d 1411 (TECA 1985), the thrust of the rulings was that the claims were for restitution and not for a penalty. That issue is not before this Court.

The cases cited by the States for the proposition that state abandoned property laws should be allowed in the face of national banking laws, *e.g., Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944), are decisively narrowed in that while such state laws may not be preempted when the national bank is active and doing business, such state laws *are* preempted when up against bank liquidation statutes. *See Roth v. Delano*, 338 U.S. 226, 70 S.Ct. 22, 94 L.Ed. 13 (1949)

(state escheat claims would be preempted if such interfered or conflicted with federal function of orderly bank liquidation); *Rushton v. Schram*, 143 F.2d 554 (6th Cir. 1944) (decision of the *Anderson* court pertains to solvent national bank, not bank in liquidation).

It must also be noted that state abandoned property laws have been found to be preempted when in conflict with various other types of federal legislation. *See, United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961) (state abandoned property laws preempted by federal statutes regarding intestate veterans who die without heirs); *Blue Cross & Blue Shield v. Dept. of Banking*, 791 F.2d 1501 (11th Cir.1986) (state abandoned property laws preempted as applied to unclaimed federal health benefits); *In re Standard Gas and Electric Company*, 301 F.Supp. 1382 (D.Del.1969), *aff'd.*, 433 F.2d 139 (3rd Cir.1970) (provision in utility company plan of liquidation approved by Securities Exchange Commission prevailed over state abandoned property law); *Alabama v. Bowsher*, 734 F.Supp. 525 (D.D.C.1990), *aff'd.*, 935 F.2d 332 (D.C.Cir.1991) (state abandoned property laws preempted as applied to unclaimed funds held by U.S. Treasury).

**A. Federal Bankruptcy Laws Regarding Bar Date and Discharge**

Creditors whose claims are scheduled as undisputed are not required to file proofs of claim. 11 U.S.C. § 1111(a); Fed.Rule of Bankr.P. 3003(b)(1). Alternatively, creditors whose claims are unscheduled or are scheduled as contingent, disputed or unliquidated are required to submit proofs of claim, or their claims will be disallowed. 11 U.S.C. § 1111(a); Fed.Rule Bankr.P. 3003(c)(2). Allowing the States' claims would permit this latter type of creditor to escape the mandates of a bar date and discharge. The Bankruptcy Code requires creditors to assert their claims in a timely fashion or to lose them. In fact, in this Court's Order of May 7, 1990, a bar date was firmly established in this case as follows:

Creditors who are required to file a proof of claim ... that fail to file a proof of claim on or before the Bar Date shall be forever barred, estopped or enjoined from ... asserting any claims that such creditor may have against Debtors or any particular Debtor....

If allowed, the States' claims would eliminate this requirement for the least diligent of the Debtors' creditors. Furthermore, allowing the States' claims would work a detriment to the Debtors' creditors who *did* file timely proofs of claims, since, to the extent that creditors who must file proofs of claim fail to do so, these "unclaimed" funds are to be made available for distribution to the Debtors' other creditors.

While sparse, the case law on this matter is consistent. In *In re Alan Wood Steel Co.*, 5 B.R. 620 (Bankr.E.D.Pa.1980), where the state claimed funds that became escheated prior to the filing of the bankruptcy petition, the court disallowed the claim on the following grounds. First, the court reasoned that there is no need to worry about "self-service by first comers" when the estate is in a bankruptcy proceeding, and, second, the court reasoned that it would be against the policy of the bankruptcy statutes to reserve funds for those creditors who did not file claims.

In the recent case of *In re Thomson McKinnon Securities, Inc.*, 125 B.R. 88, 93 (Bankr.S.D.N.Y.1991), *aff'd. without opinion* (S.D.N.Y.1991), where the state claimed funds based on its abandoned property laws, the court held that the state laws were in "direct conflict with the distribution scheme established under the federal bankruptcy laws" and, therefore, that the state law "must give way to the distribution scheme established under the federal bankruptcy laws." The *Thomson* court also noted that the state's claim did not reflect a right to payment arising out of any transactions, dealings or contracts between the state and the debtor and that allowing the state's claim would be detrimental to those creditors of the debtor who did file timely proofs of claim. *Id.*

**B. Federal Bankruptcy Laws Regarding Unclaimed Dividends**

It must be admitted that in this large bankruptcy, as well as in most large bankruptcies, there will be a fair number of creditors who simply will not negotiate their distribution checks for one reason or another. Undoubtedly, some creditors will never even receive their distribution checks because the Debtors are bound to have incorrect and/or old addresses for a number of their creditors. But the Code and the case law have addressed this issue: dividends which go unclaimed, for any reason, revert to the debtor in a Chapter 11 case.

The issue of unclaimed dividends is governed by 11 U.S.C. § 347 which states in pertinent part as follows:

(b) Any security, money or other property remaining unclaimed at the expiration of the time allowed in a case under chapter ... 11 ... becomes the property of the debtor....

The case law on this question is equally clear. *See In re Thompson's Estate*, 192 F.2d 451 (3rd Cir.1951) (state escheat not allowed against unclaimed dividends since by the very terms of § 66 of the Bankruptcy Act they go back to the debtor); *In re George Rodman, Inc.*, 50 B.R. 313 (Bankr. N.D.Okla.1985) (Bankruptcy Code regulates distribution of unclaimed property so that state escheat is not applicable); *In re Goldblatt Bros., Inc.*, 132 B.R. 736 (Bankr. N.D.Ill.1991) (§ 347(b) "provides a clear bright-line rule that unclaimed funds are automatically to be returned to the debtor. Congress thereby ensured that estates could be closed without costly protracted litigation over undistributed funds among the debtor, its creditors under the plan, or state treasurers under state laws of escheat").

Since most if not all of the anticipated unclaimed dividends in this bankruptcy would qualify as abandoned property claims under the states' claims, allowing such claims would work an impermissible end run against 11 U.S.C. § 347(b).

## C. Federal Bankruptcy Laws Regarding Equality of Distribution

The Bankruptcy Code requires equal treatment for creditors in the same class.

> Notwithstanding any applicable nonbankruptcy law, a plan shall— ... provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest.

11 U.S.C. § 1123(a)(4). However, not all the States have identical abandoned property laws or methods of distribution. For example, some States allow interest on claims and some States do not; relevant abandonment periods vary among the States; and the various States use various procedures to locate creditors. Allowing the States' claims would, in effect, create 25 additional separate estates which would result in unequal distribution to creditors in the same class.

## D. Debtors Are Not Benefitting from Wrongdoing

■ There is an exception to the above-described preemption of state abandoned property laws, but such exception is not applicable in the present case.

In *In re Berry Estates, Inc.*, 812 F.2d 67 (2nd Cir.1987), the debtor, who had been found guilty of charging excessive rent for rent-controlled apartments, was ordered by a state court to return the excess rent to the tenants and to pay the excess rent into the county clerk to be held in escrow. Subsequently, the debtor filed a petition in Chapter 11. The state comptroller filed a claim for excess rent on behalf of unknown tenants and those who had moved from the apartments before and during the litigation. The Second Circuit held that the unclaimed funds should not revert to the debtor but should go to the state comptroller as abandoned property if not claimed by the tenants within five years from the deposit with the county clerk.

The rationale of the *Berry* court was two-fold. First, the Second Circuit held that a debtor should not be able to profit from its own misconduct:

> A determination in bankruptcy that Berry was entitled to keep the unrefunded excess rents would fly in the face of New York state's regulatory powers and the deference pledged to them by the bankruptcy laws.

*Id.*, at 71. The court noted that Congress neither intended for bankruptcy laws to abrogate the states' police powers nor that bankruptcy court would be a haven for wrongdoers. *See, e.g., Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (criminal restitution not dischargeable); *Mid Atlantic Nat'l. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) *reh'g denied*, 475 U.S. 1090, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986) (state environmental protection laws not abrogated by bankruptcy laws); *In re Flight Transp. Corp. Securities Litigation*, 730 F.2d 1128 (8th Cir.1984), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985) (property obtained by fraud of the debtor, or by other tort, is not properly part of debtor's estate).

We do not find it necessary to address the issue of whether or not unclaimed property laws are police powers of the state because, unlike *Berry*, there had been no adjudication in any state court that the Debtors in this case are not in compliance with any state law. The States had ample time and opportunity prior to January 15, 1990 to bring claims against the Debtors. Further, the States may always move for relief from stay in order to pursue their alleged claims against the Debtors in the appropriate state forum. In any event, this Bankruptcy Court is not the place to litigate alleged violations of 25 different state abandoned property laws.

Second, the *Berry* court noted the importance of the fact that there were no other creditors with claims against the debtor, *id.* at 71, which fact served to amplify the benefit to be reaped by the debtor should the debtor be allowed to retain the unrefunded rent excesses. Unlike *Berry*, there are many other creditors of the Debtors in this case. It can hardly be said that these Debtors filed their bankruptcy petitions to

escape any liability in the states based on abandoned property laws.

■ The States have alleged that the debtors "wrongfully" listed as contingent the claims of approximately 6,000 former shareholders of the Debtors who did not tender their shares in connection with the Allied–Campeau merger in 1986 and the Federated/Campeau merger in 1988, thereby gaining an advantage when some of these creditors failed to file proofs of claim. The States also claim that they should have received notice directly from the Debtors regarding the motion to deny these claims. This Court has already entered an order granting the above-referenced motion. If this argument is to be pursued, 11 U.S.C. § 502(j) and Bankruptcy Rule 3008 provide the appropriate procedural vehicle.

■ The States have also alleged that the Debtors knew or should have known that they were using out-dated mailing lists and, therefore, that the Debtors knew or should have known that notice to their creditors would be inadequate. This argument is without merit. First, every large corporate debtor is going to have numerous creditors for which it has old or incorrect addresses. This problem is cured by notice by publication. Second, this simply does not give rise to an act of such wrongdoing to allow an exception to federal preemption.

## II. Post-petition Escheat of Pre-petition Obligations Are Also Preempted by Federal Bankruptcy Law

By virtue of the very nature of abandoned property, in that it must go unclaimed for a certain period of time before becoming "abandoned" property, there are three categories of abandoned property claims which may be found to exist in this bankruptcy, as in all bankruptcies.

First, there are claims which would qualify as abandoned property claims as of the date of the filing of the bankruptcy petition. As we have discussed above, we hold these claims to be preempted by federal bankruptcy laws regarding the establishment of a bar date, distribution of unclaimed dividends and equality of distribution, provided the debtor is not benefitting from any wrongdoing which has been previously solidified in the appropriate forum.

■ Second, there are claims which would qualify as abandoned property claims *after* the date of the filing of the bankruptcy petition but *before* the confirmation of the plan. While claims do not have to be fixed or matured or reduced to judgment to qualify as claims, 11 U.S.C. § 101(5), a creditor must be an entity that has a "claim against the debtor *that arose at the time of or before the order for relief* concerning the debtor". 11 U.S.C. § 101(10)(A) (emphasis added). State claimants with abandoned property claims arising *after* the date of the filing of the bankruptcy petition violate the definition of creditor as set forth in the Bankruptcy Code. Furthermore, the post-filing metamorphosis of such "regular" claims into abandoned property claims would create an extreme administrative burden on the Debtors, causing the need for almost daily amendments to the bankruptcy schedules and notices to creditors regarding the status of their claims.

Third, there are claims which would qualify as abandoned property claims *after* confirmation of the debtors' plan. However, confirmation of the plan results in the discharge of all prepetition obligations. 11 U.S.C. § 1141(d)(1). To allow these claims as abandoned property claims would essentially eviscerate the Bankruptcy Code concept of discharge.

Of course, it is not to say that the post-petition Debtors are free to violate state abandoned property laws. Any obligations of the Debtors which arise post-petition shall be treated by the Debtors as "business as usual." These obligations may eventually give rise to abandoned property under state abandoned property laws.

## III. States Are Not § 543(b) Custodians

■ We find the Debtors' argument that the States' role as "custodians" under their abandoned property laws required the states to turn over the abandoned property

to the debtor under 11 U.S.C. § 543(b) to be without merit. The purpose of § 543(b) is to cause a transfer of property from the *debtor's* custodian to the trustee. Under abandoned property laws, the states are custodians for the *creditors*.

### IV. *Class Proof of Claim*

We find that it is not necessary to make a ruling on the Debtors' argument that the States are not in compliance with the Bankruptcy Code and Rules regarding class proofs of claim. However, it would seem inherently unfair to disallow a class proof of claim based on abandoned property laws because verified names and addresses of the class members might not be available. If names and addresses could be ascertained with certainty, undoubtedly many of the abandoned claims would no longer be abandoned. Similarly, it would be metaphysically impossible to have an abandoned property owner as the class representative since as soon as he came forward to represent the class, his claim would no longer be abandoned. Such should not be fatal to this type of class proof of claim.

### V. *Conclusion*

Without discounting the good purpose behind state abandoned property laws, the Bankruptcy Code has in place an elaborate system for the distribution of the debtor's property, which system serves to protect both creditors and debtors. The application of state abandoned property laws would conflict with and serve to confuse the bankruptcy distribution process. Furthermore, in a case of this magnitude, which not only received much "free press", but wherein notice of the bankruptcy was given to all creditors through extensive national publication in *The Wall Street Journal, The New York Times,* and numerous other major newspapers, this court is hard pressed to muster much sympathy for those persons who are the "rightful" owners of abandoned property. Even in a court of equity, there comes a time when the creditor must step forward and protect his own rights. While designed to protect,

state abandoned property laws must yield to the federal Bankruptcy Code.

IT IS SO ORDERED.